ALBERT L. CATLIN *v.* EDSON S. HULL.

Debts due from solvent debtors, upon promissory notes, are personal estate, within the statutes of this state.

In construing statutes the rule is, to ascertain the intent of the legislature,—which is to be gathered from the language used, taken in connection with the subject matter and having reference to all that is said upon the subject.

One of the objects, which the legislature intended to effect by the statute of October 30, 1844, [Acts of 1844, p. 8,] was, to make all property within this state subject to taxation here, even though it belonged to persons residing out of the state and the property is actually managed here by some person other than the real owner. And the terms " *held in trust*," as used in that statute, were intended to include all property, which is situated permanently here, under the control, management and direction of any person, for the use and benefit of the owner.

Each sovereign state has the power to tax all persons, or property, within its jurisdiction.

In this case one H., who resided in the city of New York, inherited from his father, who was a resident of this state previous to his decease, certain property, consisting of debts due from solvent debtors resident in this state, evidenced by promissory notes; and he appointed the plaintiff, who was also a resident of this state, his agent, to control and manage the property, and collect and reloan from time to time, as he should think proper, and allowed the plaintiff a

Catlin *v.* Hull.

specified salary for so doing. And it was held, that the legislature of this state had power to enact a law, subjecting property so situated to taxation, and that the property was taxable, under the statute of October 30, 1844, and that it was property set to the list of the plaintiff, as "agent" of H., in the town in which the plaintiff resided.

TRESPASS for taking certain personal property. The facts were agreed by the parties to be as follows.

The property in question belonged to the plaintiff, and was taken by the defendant. The defendant was constable of Orwell, and held for collection certain rate bills and warrants, for state and town taxes in Orwell, voted and assessed upon the list of 1847, which in-cluded a state and town tax against the plaintiff, as agent of Thomas A. Hammond. The property, upon which these taxes were assessed, was the personal property of said Hammond, and was his distribu-tive share of the personal estates of his father and mother, who were residents of Orwell previous to their decease, and whose es-tates had been settled and distributed previous to the property being put into the list of the plaintiff, as agent. This property consisted entirely of promissory notes, or *choses in action*, against individuals in this state, payable to Thomas A. Hammond. These notes were placed by Hammond in the hands of the plaintiff, who was a resi-dent of Orwell, as his agent, to be managed by the plaintiff, with a discretionary power to keep them on interest, or collect and re-loan, as should be most beneficial to Hammond; and most of the notes had been collected by the plaintiff, and the money re-loaned, pre-vious to the making of the grand list, on which the taxes in ques-tion were assessed;—and when new loans were made, all the notes taken therefor were made payable to Hammond.

Hammond left this state in June, 1844, and has ever since resided in the city of New York; and the notes were placed by him in the hands of the plaintiff, as above mentioned, in February, 1846 ; and the plaintiff has ever since had the care of the notes, keeping the money on interest, or collecting and re-loaning it, as was most for the interest of Hammond,—Hammond having a right at any time, at pleasure, to terminate the plaintiff's agency and resume posses-sion of the property; and the plaintiff receiving a specified salary from Hammond, for his services. The listers of Orwell set this property in the list of the plaintiff, as "agent" of Hammond, sep-

20

arate from the plaintiff's individual list; and the rate bills were made against the plaintiff, as agent, or trustee, of Hammond.

The regularity and legality of all the proceedings in assessing and collecting the taxes upon the property, and of the taking and selling of the property named in the declaration, were conceded; and it was declared by the parties, that they submitted to the court the question, whether the said property of Hammond was subject to be taxed in Orwell.

Upon these facts agreed upon, the county court, December Term, 1848,—BENNETT, J.,. presiding,—rendered judgment for the defendant. Exceptions by plaintiff.

*H. Hale* and *A. Peck* for plaintiff.

The property, on which the tax in question was assessed, is not taxable in this state. To sustain the validity of the tax two things are indispensable,—first, that the property, on which the tax was assessed, be embraced within the statutes in relation to making the grand list,—second, that the legislature have power to tax such property, thus situated.

This property is not embraced within the general provisions of the ninth section of the statute of 1841,—Acts of 1841, p. 10,—as that section limits the taxation of personal property to cases, where the owner is an inhabitant of this state on the first day of April; nor of the tenth section of the same statute,—as that is limited to estate " *held in trust* ;" nor within the statute of 1844,—Acts of 1844, p. 8,—which enacts, that " all personal estate *held in trust* by an executor, administrator, agent, or trustee, the income of which is to be paid to any married woman, or other person," shall, if such married woman, or other person, reside out of the state, be assessed to such executor, &c., in the town where he resides. The subject matter of taxation, by this latter statute, is expressly confined to property " *held in trust.*" These terms, which have a known legal signification, import, that the person holding the property is invested with the legal title, right, or interest, while the equitable right is in another. 2 Story's Eq. 230, § 964. The enumeration of the persons, who may hold such property in trust, does not enlarge the construction, so as to include property *not held in trust;* but the office of these words is, to restrict it to the persons enumerated.

The addition of the word "agent," therefore, does not alter the construction. This word is to be taken as synonymous with trustee, or as intending an agent of the same character, or class, as the others enumerated, that is, an agency coupled with a legal interest, or property, in the subject matter. Story's Ag. 495, 615. Com. Dig., Attorney C 9, 10. 7 Ves. 28. *Glaussen* v. *Morton et al.*, 21 E. C. L. 157. 2 Esp. R. 562. *Hunt* v. *Rousmanier's Adm'rs*, 5 U. S. Cond. R. 401. 6 Conn. 559.

The property, on which the tax is assessed, is but a right of action. That is in Hammond, not in Catlin, the agent; and a bare custody of the evidence of a debt is not holding property *in trust*, within the meaning of the statute, although coupled with a power to collect and re-loan. *Waltham Bank* v. *Waltham*, 10 Met. 334. Taxing the agent makes him personally liable for the tax; and this could not be the intention of the legislature, unless where the agent has the legal title to the property, at least as trustee; otherwise his agency might be terminated, and he left liable to a tax, subsequently assessed upon an existing list.

Property of this description is, on general principles, both taxable and taxed where the owner resides. *Thorndike* v. *Boston*, 1 Met. 242. *Sears* v. *Boston*, Ib. 250. *Union Bank* v. *Tennessee*, 9 Yerg. 490, cited in 1 Kent 427. *Tr. of Deming* v. *Atwater*, Sup. Ct., Chittenden Co., 1837. The *situs* of a debt is, by universal law, the domicil of the creditor. It is not correct, therefore, to say, that the property in question is here;—it is in New York, where Hammond has his domicil.

*H. Seymour* and *E. J. Phelps* for defendant.

The property was fully within the jurisdiction of this state, and the right to tax it, in common with other property, for the support of the government, is a necessary incident to the sovereignty of the state. The right to tax is co-extensive with the jurisdiction. It extends, not only to all persons, but to all property within it. And where the property is within and the owner without the state, the right is founded upon the jurisdiction over the property. *McCulloch* v. *Maryland*, 4 Wheat. 216, [4 U. S. Cond. R. 466.] 1 Kent. 426. *Smith* v. *Burley*, 9 N. H. 428. *Osborn* v. *Bank of U. S.*, 5 U. S. Cond. R. 742. Vattel 235. It is the error of the argu-

ment for the plaintiff, that it assumes, that this right arises from jurisdiction over the owners of property alone. It is true, that it is ordinarily exercised upon the person, and, through the person, upon the property. And where a statute provides for raising taxes in that manner only, they cannot be raised upon property, unless the owner is an inhabitant. But this is by no means the extent of the power. And where the legislature choose to subject to taxation property thus voluntarily placed within their jurisdiction, their right to do so is unquestionable. Although it is the general principle, that personal property follows the owner, and is subject to the law of his domicil, yet this only applies to the purposes and incidents of contract and descent;—for the purposes of taxation and judicial proceedings it is always affected by the law of the place where it is situated. Story's Confl. of Laws 462. *Porter* v. *Heydock*, 6 Vt. 374.

It is objected, that the terms "*held in trust*" do not apply to property in the situation in which this was. The term trust, as applied to personal property, has acquired a much more general legal meaning, than the one claimed by the plaintiff. It signifies any property, held by one for the benefit or use of another, whether by legal title, or by contract. *Williams* v. *Holden*, 4 Wend. 224. 5 Cow. 488. *Porter* v. *Bank of Rutland*, 19 Vt. 410. It is apparent from the context of the statutes, that the term was not intended to be used in its more restricted sense. If it were, why add to the word " *trustee*," which, in that view, fully expresses all that was intended, the other descriptions of executor, &c., with whose official character such a trust is not reconcilable? And to the statute of 1841 the legislature have added that of 1844, which is in the same words, except that the word " *agent* " is added.

The opinion of the court was delivered by

Poland, J. The statement of facts, upon which this case is submitted, presents for the consideration of the court the question, whether certain property of Thomas A. Hammond, in the possession of the plaintiff as Hammond's agent, was legally subject to taxation in the town of Orwell, under the laws of this state Two main questions are made by the plaintiff in this case, either of which, if sustained by the law, is decisive of the case in his favor. First;

It is insisted, that the plaintiff does not hold the property of Hammond in such a manner, as to come within the provision of the statute of October 30, 1844. Secondly; That, if he does hold the property in such manner, as to come within that statute, the legislature had no authority to enact such law and thus render the property liable to taxation in this state.

Upon the first question it is insisted by the plaintiff, that the property of Hammond in the hands of the plaintiff was not *personal estate,* and so does not come within the statute of 1844; and it is argued, that the notes in the plaintiff's hands are not property, but merely evidences of rights of action in Hammond, of which the plaintiff has the custody. It is not necessary for us to enter into any discussion upon that subject; for in the third section of the statute of 1841, relating to the grand list, the legislature have defined, what kind and description of property is meant by the term *personal estate,* and have expressly included "all debts due from solvent debtors, whether on account, note, or contract, bond, mortgage, or other security."

It is also claimed, that this property, in the hands of the plaintiff, is not *held in trust,* within the true intent and meaning of the statute; and it is urged, that the true legal definition of an " estate held in trust" is, an estate, where the legal *estate, title,* or *ownership,* is in one person, denominated the trustee, but held for the benefit and use of some other person, who is entitled to the income or profit thereof. In a certain sense this is a correct use of the terms *estate in trust,* and probably the strict legal sense of the terms; but the important inquiry is, as to the sense in which they were used by the legislature, in the statute above mentioned.

In construing statutes, as in the construction of mere private writings between private persons, the great rule of construction is, to ascertain what was the intention of those using the language,—to be gathered from the language used, taken in connection with the subject, and having reference to all that is said on the subject. It is apparent, that one of the objects, which the legislature were intending to effect by the statute of 1844, was to make all property within this state subject to taxation here, even though it belonged to persons residing out of the state, and was actually managed here by some other person than the real owner; and we think the terms

" *held in trust,*" as used in the statute, were intended to include all property, which is situated permanently here, under the control, management and direction of any person, for the use and benefit of the owner. And in a certain sense, (and probably the more general and popular sense,) a person holding property under such circumstances does *hold it in trust* for the owner. We think this objection is perfectly answered by the counsel for the defendant, that, if the legislature had only intended to include *estates in trust,* in their strict, ancient, legal sense, as signifying a legal title, or estate, in the trustee, there was no occasion for them to have gone farther in the description of persons holding such property, than to have used the term *trustee;* which would be all that was necessary. And when, in 1844, they added to the list of persons, holding personal estate in trust, the word " *agent,*" we think it perfectly clear, that they intended to reach precisely such a case as the present.

The legislature obviously intended to use terms, that would not authorize a taxing of property in the hands of an *agent,* or *trustee,* which was here merely for a temporary purpose, like a debt sent to an attorney here, by some person out of the state, for collection,— but used such language, as was intended to cover all cases of permanent loans, or investments, in this state, by persons residing out of the state. From the language of this statute, taken alone and by itself, we have no doubt, that this case is entirely within its provisions ; and, when taken in connection with the other provisions on the subject of taxation, and the history of legislation in this state upon that subject, we think no one can well doubt, what the object and intention of the legislature were in its passage.

This leads us to the examination of the other point in the case, viz., Had the legislature the right to pass such a law and subject this property to taxation in this state ?

It is insisted, upon this part of the case, in the first place, by the plaintiff's counsel, that the property of Hammond, of which the plaintiff has the care as his agent, cannot be considered as legally existing in this state ; and that this is an attempt to tax property, when neither the property, nor the owner, is within the state and within the jurisdiction of our laws. We think, however, that this doctrine is quite too refined and artificial to be put to any practical use. The case shows this property to have originally belonged to

Catlin v. Hull.

the father and mother of Hammond, who formerly resided in this state, and died here, and that he inherited the same from them, and that the property has never been removed from this state,—unless Hammond may at some time have carried the notes to New York, that the debtors reside in this state, and that the notes are in this state, in the hands of the plaintiff. · Of course this property is so far here, that it could be attached here and held on debts against Hammond ; and if it is not to be treated as actually existing here, it would be very difficult to tell where it is in fact situate.

But it is insisted farther, that, provided this property is to be considered as having its actual locality in this state, yet that personal chattels, and especially debts due, having no fixed *situs*, follow the person of the owner, and are considered as being legally situate where the owner has his *domicil ;* and from this it is argued, that personal estate, and especially debts, cannot be taxed by the state, within whose jurisdiction they actually exist, if the *domicil* of the owner be elsewhere.

It is undoubtedly true, that, by the generally acknowledged principles of public law, personal chattels follow the person of the owner, and that, upon his death, they are to be distributed according to the law of his *domicil ;* and in general, any conveyance of chattels, good by the law of his own *domicil,* will be good elsewhere. But this rule is merely a legal fiction, adopted from considerations of general convenience and policy, for the benefit of commerce and to enable persons to dispose of their property, at their decease, agreeably to their wishes, without being embarrassed by their want of knowledge in relation to the laws of the country, where the same is situated. But even this doctrine is to be received and understood with this limitation, that there is no positive law of the country, where the property is in fact, which contravenes the law of his *domicil ;* for if there is, the law of the owner's *domicil* must yield to the law of the state, where the property is in fact situate.

But we do not consider this doctrine, in relation to the *situs* of personal chattels and relating to its transfer and distribution, as at all conflicting with the actual jurisdiction of the state, where it is situate, over it, or with their right to subject it, in common with the other property of the state, to share the burthen of the government, by taxation. Judge STORY, in his Conflict of Laws, page 19,

says,—" The first and most general maxim, or proposition, is that, which has already been adverted to, that every nation possesses an exclusive sovereignty and jurisdiction within its own territory.   The direct consequence of this rule is, that the laws of every state affect and bind directly all property, whether real or personal, within its territory, and all persons, who are resident within it, whether natural born subjects, or aliens, and all contracts made and acts done within it.   A state may therefore regulate the manner and circumstances, under which property, whether real, or personal, or in action, within it, shall be held, transmitted, bequeathed, transferred, or enforced, the condition, capacity and state of all persons within it, the validity of contracts and other acts done within it, the resulting rights and duties growing out of these contracts and acts, and the remedies and modes of administering justice in all cases calling · for the interposition of its tribunals to protect, and vindicate and secure the wholesome agency of its own laws within its own domains."   Again, Judge Story says, in the same work, page 462,— " A nation, within whose territory any personal property is actually situate, has as entire dominion over it, while therein, in point of sovereignty and jurisdiction, as it has over immovables situate there. It may regulate its transfer, and subject it to process and execution, and provide for and control the use and disposition of it to the same extent, that it may exert its authority over immovable property." And Judge Story expressly states, that the doctrine, that the *situs* of personal property follows the *domicil* of the owner, is subject to this jurisdiction and right of the state where the property is situate in fact.   Ch. J. Marshall, in giving the judgment of the court in the celebrated case of *McCulloch* v. *State of Maryland*, 4 Wheat. 429, expressly recognizes this doctrine of dominion and sovereignty in the state, and farther, that, as a necessary incident to such sovereignty, and co-extensive with it, is the power of taxation.   Chancellor Kent also recognizes this doctrine, to its fullest extent.   1 Kent 426.

The only case, which has been shown to the court, which at all conflicts with this doctrine, is the case of *Union Bank of Tennessee* v. *The State of Tennessee*, 9 Yerg. 490.   We have only a short note of that case, and from that it would seem, that the principal question in the case was, whether the stock of that bank was taxable at

Catlin v. Hull.

all,—the bank, by its charter, having agreed to pay the state one half of one *per cent.* annually on its capital stock, for the privilege of banking; and the court held, that the stock of the bank could not be taxed at all. It is stated in the note of the case furnished us, however, that the court in that case held farther, that, if taxable, such part of the stock as was owned out of the state could not be taxed, on the ground that it was a mere *chose in action* and must be taxed where the owner resides. We are fully satisfied, however, that, by all the well settled and acknowledged principles relating to the power of sovereign states, they have the power to tax all persons, or property, within their jurisdiction; and such has been the settled practice in this state, not only in reference to property which is tangible, but also that which is incorporeal, such as shares in manufacturing and banking corporations. Such, also, seems to be the practice in the state of New Hampshire; *Smith* v. *Burley et al.,* 9 N. H. 428; and we have no doubt such is the general practice of the states.

We are not only satisfied, that this method of taxation is well founded in principle and upon authority, but we think it entirely just and equitable, that, if persons residing abroad bring their property and invest it in this state, for the purpose of deriving profit from its use and employment here, and thus avail themselves of the benefits and advantages of our laws for the protection of their property, their property should yield its due proportion towards the support of the government, which thus protects it. And as this power of taxation in this state is only to be exercised in cases, where such property is not shown to be taxed to the real owner, where he resides, we think, that there is no reason for saying, that this power has been attempted to be exercised in any unjust spirit, or that its exercise shows any want of proper comity in our state government. In short, we are all fully agreed, that the case comes within our laws upon this subject, and that the legislature, in the passage of those laws, did not exceed their legitimate powers upon the subject; and consequently we find no error in the proceedings of the county court; and the judgment of that court is affirmed.