George ANDREWS, J.,
delivered the opinion of the Court in the petition of plaintiff for a re-hearing.
In these causes a petition has been filed by the Mayor and City Council for a re-hearing; the petitioners basing their application upon a supposed error in the decision of this Court announced at the present term, in holding, as the Court did in that decision, that property of citizens of this State in the shares of stock of the incorporated Banks of this State must be held to have its situs for the purposes of taxation, at the place of the owner’s domicil, and not at the place where the Bank is located, if such location is at a place other than the domicil. The importance of the question involved renders it proper to re-examine the case in the light of the additional authorities furnished by the counsel for the petitioners: and after such ex- *606 animation, we are fully satisfied of the correctness of our former decision.
Our statute, (Code Sec. 563,) after providing for the assessment of poll tax, real estate, and slaves, declares: “All other personal property shall he assessed in the county where it is at the time of the assessment.” If the Bank is located in one county in this State, and the shareholder resides in another county, at which place are shares of stock so held, located?
The shareholder in an incorporated company, is not a partner of his co-corporators, nor a joint owner with them of- the property and assets of the corporation. His share of the stock is a species of chose in action, the ownership of which entitles him to participate in the net profits earned hy the corporation during its existence, and at its dissolution to a ratable proportion of the property of the corporation that may remain after payment of the debts of the corporation: 3 Wall, 584; 35 N. Y., 430.
It is commonly said that personal property follows the person of the owner; a statement, which taken literally would he a fiction of law, and which is frequently spoken of as such. But properly understood, it expresses only the simple and reasonable doctrine that, for certain purposes of disposal, conveyance, distribution, etc., the property which a person has in chattels, is subject to the regulation of the law of his domi-cil, and not to that of the place where the chattel is corporeally located: Story Confl. Laws, sec. 380.
But this doctrine, convenient and reasonable as it is in regard to the proper subjects of' its application, *607 has no place in this discussion. Our statute declares, 'that personal property shall he assessed “in the county where it is,” and -there is no doubt that the literal terms of the statute must control, and wherever the personal property “is,” whether it be a chose in action, or a tangible chattel, there it must be taxed.
But where is a chose in action? The- right of the owner is not a right in a thing, or a right to a thing, but a mere right of action to recover his debt, or his damages, which, until recovered, have no corporeal existence. And independently of authority, it would seem to require quite as little the aid of fictions of law, to locate this intangible right of action at the place where the owner resides, and inhere the right exists, as at the domicil of the party against whom the right must be enforced.
But, upon authority, it is clear that the situs of a chose in action, must be held to be at the domicil of the owner. It is true that, in seeking his remedy the creditor is compelled to have recourse to the law of the place where his debtor, or the property of the debtor is; and it is also true that the Courts of one State in affording such remedy, will do so with due regard to the rights and interests of its own citizens; but this principle concludes nothing as to whether the situs of the chose in action, is at the one place or at the other. Thus an administrator appointed in one State, cannot maintain a suit in another, not in consequence of any difficulty as to the situs of the debt, but because his authority as administrator is confined to the forum of his appointment.
*608 In Parsons vs. Lyman, 20 N. Y., 103, an executor appointed in Connecticut, where his testator was domiciled, had, by the voluntary payment of a debtor of his testator residing in the State of New York, collected a sum of money and carried it into the State of Connecticut. Afterwards the same executor took out letters of administration in the State of New York, and the question arose, whether he was bound to account in the latter forum for the said money. Denio, J., in that case, says: “By the general rules of law, the debts thus converted into money, had no locality other than that of the creditor’s domicil in Connecticut; and when they had been thus converted, and the avails had been brought into the jurisdiction of the creditor’s domicil, their origin and former history become immaterial, as I conceive, for any purpose, whatever.”
In Holmes vs. Remsen, 4 J. . Ch. R., 460, the contest arose in regard to a debt due to a bankrupt, in foreign jurisdiction; and Kent Chancellor, quotes with approval the decision of Lord- Hardwicke, in 2 Yes., 85, Thorn vs. Watkins, as follows: “That taking a foreign probate, or letters of administration in the country where the property was situated, was but for form, and to enable the party to sue, and that all debts followed the person not of the debtor, but of the creditor to whom due, and that it would be most mischeivous if they were to follow the person of the debtor.”
Where a bond executed by a resident of New York to a resident of Vermont, came to the hands of the administrator in the latter State, it was held to be as *609 sets in Ms Rands, even though secured by mortgage in New York. “The bond was in Vermont and was owned there, and was assets to be distributed there, under the proper jurisdiction of their Courts.” * * * * “If a creditor of Hotchkiss had sued out letters of administration in this State, he would have had nothing to administer: Per. Kent, Ch., Doolittle vs. Lewis, 7 J. Ch. R., 49.
An executor or administrator, or administrator of the domicil of the decedent, and having the possession of negotiable paper, due to the deceased in a foreign jurisdiction, may transfer it by indorsement.' Story Confl. Laws, secs. 859, 517.
So of stocks: “Though stock abroad may be as to its transfer, -affected by the local laws, it is not to be treated as of course as partaking of the character of eal estate, and descendible as such.. On the contrary, if it be by the local law, personal estate it may be disposed of by an administrator as such, and the title passes if it be made in the forms prescribed by the foreign law.” Story Confl, Laws, sec. 383, Note 2.
There is but little direct authority upon this question. Cases in regard to the right of personal representatives to bring suit in foreign jurisdictions, throw no light upon it, because that right depends not upon the situs of the cause of action, but upon the local limitation upon, the authority of the representative. The English cases relied upon by petitioner’s counsel, are of no value in this connection, for the reason that they are based upon a rule established in' the Ecclesiastical Courts which is both arbitrary and contradictory. They hold *610 that simple contract debts make bona notabilia where the debtor lived, specialty debts at the place where the bond happened to be at the time of the death of the testator, and judgments, statutes and recognizances, at the places where they are given or acknowledged, the debt following the person of the debtor in only one of these three cases: 1 Wins. on Executors, 263.
The cases cited .by petitioner’s counsel are the following, and we will examine them in detail:
In Ex parte, Horne, 7 B. & C., 632, and 1 Man. & Ry., 529, the testator died at Birmingham, the owner of a share in a canal company having its office at Birmingham, and it was claimed that the executrix ought to take out a prerogative probate, on the ground that as the canal ran through several dioceses,., the testator must be held to have been the owner of property in each diocese. But it was held, that the share was personal property, and that probate was properly made at Birmingham. The decision is placed upon the ground that the testator died at Birmingham, and that the transfer of the share to him was registered upon the company’s books at that place.
The King vs. Undertakers of A. & C. Navigation, 2 Term R., 660, involved the question, where a tax assessed upon tolls levied upon river navigation, should be assessed; at Leeds and Wakefield, where the tolls were collected, or at every municipality through which the navigation extended? It was treated by both Court and counsel, as in the nature of a tax on land, but held that it must be assessed at the places where the tolls were collected. It was not a tax on shares of *611 stock or on choses in action, and there does not appear to have been any incorporated company in the case.
In Rex vs. Cardington, Cowper, 581, and in The King vs. The Company, etc., 8 Term R., 340, the question was the same; and neither of these cases throws any light upon the present inquiry.
In Robinson vs. Bland, cited from 2 Burr., 1079, the only question was, whether a bill of exchange given in France, and payable in England, upon a consideration illegal by the law of England, ‘ was enforcable in the English courts, and it was held, that, as it was payable in England, the law of that country must control.
Milne vs. Moreton, 6 Binn., 353, was a case in which the Judge éxpressed his opinion that property, consisting of debts, may be said to be in the place where the debtor resides; but that question was not directly involved, the contest being one between domestic and foreign creditors.
Johnson vs. Lexington, 14 B. Mon., 648, was a question upon the construction of the charter of the City of Lexington. The Court say: “We think the power of taxation conferred on the city authorities by the charter, extends only to the property and estate within the city, and that the property referred to is visible property, actually situated within the city, and not such estate as has merely a legal or constructive status, and which is regarded for some purposes, as being with its owner wherever he is domiciled. Money and choses in action, constitute estate of this character, and by a legal fiction are considered as having a locality wherever the person resides to whom they belong.”
*612 Finley vs. Philadelphia, 32 Penn., 381, was a ease involving no question but that of the right of the city to tax a , party temporarily residing in the city; for his household furniture used by him at his residence; and it was very properly held that the tax was valid.
In New Albany vs. Meekin, the question was, whether, under a charter conferring the right to tax all real and personal estate within the city, the authorities could tax a part interest in a steamboat which touched only occasionally at New Albany.. The right of taxation was, of course, denied by the Court.
Catlin vs. Hull, 21 Vt., 152, was a case in which a resident of the State of New York, owning notes against persons residing in Vermont, placed them in the hands of an agent in Vermont for collection. The statute of the latter State provided that property held in trust by an executor, administrator, agent or trustee, should be assessed to such executor, etc. It was held that these notes were taxable in the hands of this agent, under this statute.
The case of People vs. Commissioners, 35 New York, 423, is cited as holding that shares in an incorporated bank, are taxable at the locality of the bank. .This case was decided upon the express terms of the statute of New York, and upon no other ground; said statute requiring that such shares should be assessed at the place where the bank is located, and not elsewhere. The case contains no intimation of the general doctrine contended for by petitioner’s counsel.
Hoyt vs. Commissioners, 23 New York, 224, was a case arising from the attempt of the Commissioners of *613 taxes to tax the plaintiff, residing in New York, upon the amount of his capital invested in his business in the City of New Orleans, and upon farm stock and household furniture in the State of New Jersey. The Commissioners claimed, that as personal property follows the person of the owner, all the plaintiff’s personal property must be held to be “within the State” of New York, for the purpose of taxation. 'The Court, per Comstock, Ch. J., held that personal property of the plaintiff actually located and employed as above stated, in Louisiana and New Jersey, was not “within the State” of New York for the purposes of taxation, within the meaning of the statute; the Chief Justice then saying: “This conclusion is intended to embrace only property which is. visible and tangible, so as to be capable of a situs away from the owner or his domicil; and I do not consider the question in reference to personal estate of a different description. It must be within this State, in order to .be subject to taxation, for so is the statute; but that may be true of choses in action and obligations for the payment of money due to a creditor resident here, from a debtor whose domicil is in another State.”
The above are all the cases cited on the part of the petitioners upon this point, except that in 19 Ill., which is not at present accessible to the Court. But .as the statute of that State expressly declares that personal property shall be assessed at the residence of the owner, it is hardly probable that that case would assist us in this investigation. These authorities do not sus *614 tain tbe petitioner’s position; and so far as they have any relevancy at all to the question before us, their weight is decidedly the other way.
The argument drawn by counsel for plaintiff in error from a review of the past legislation of this State, does not, in our view, sustain his positions. The omission in the compilation of the Code, of most of the prior statutes which he cites, certainly cannot indicate an intention on the part of the Legislature, to adhere to the theory or principles of the omitted statutes.
Provisions in the statute for the attachment of stocks owned by non-residents, and for securing a lien on such property by the registry of the judgment “in the county where the property is,” indicate simply that in the case of a non-resident owner, the convenient rule is, to regard the stock, for the purposes of notice, as located where the corporation' is.
By section 541 of the Code, all investments by inhabitants of this State, in stocks out, of the - State, and all capital lent or deposited out of the State, are taxr able. The Code requires the assessment for taxation, to be in the county where the property is, and if the locality of State stocks and of the shares of moneyed -corporations is necessarily in the State where they are issued, or where the Corporation exists, such foreign stocks could not be assessed at all in this State.
But it is further claimed, that, even if our conclusions above drawn are sound, still, the tax imposed in these cases is not illegal, because the law of the Unit *615 ed States prohibits only a discrimination in • the rate and place of taxation, hut does not assume to control or affect the manner of its assessment.
The objection to this assessment is, that it conflicts with the provisions of our own constitution requiring taxation to be equal and uniform. The owners of shares in National banks may reside at the place where the bank is located, or at other places; and if such shares were to be taxed under our present laws, it could only be in those cases in which the residence of the owner is at the locality of the bank. For, if the residence of the owner is • elsewhere, he could not be assessed in respect of such shares at his residence, because the law of the United States forbids it; and he could not be assessed at the place where the bank is located, because the law of this State does not permit it.
It is obvious, therefore, that neither equality nor uniformity could be obtained in attempting to carry out such a system of taxation.