"The judgment appealed from is therefore affirmed.

"Temple, J., and McFarland, J., concurred."·

---

[S. F. No. 1171.    Department Two.—December 20, 1900.]

## JANE L. STANFORD, Executrix, etc., Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

TAXATION—FOREIGN CORPORATIONS—ESTATES OF DECEASED PERSONS— CERTIFICATES HELD BY EXECUTRIX.—Certificates of stock in foreign corporations owned by a deceased person, and which have come to the possession of the executrix, are taxable to the estate.

ID.—CERTIFICATES AND BONDS PLEDGED BY DECEDENT IN NEW YORK— REPRESENTATION BY EXECUTRIX.—Certificates of stock and bonds of foreign corporations pledged in New York for money borrowed by the decedent, who was a resident of California, were taxable in this state to him while living, and are taxable after his death to his estate, though never possessed by the executrix. The executrix is entitled to resume control thereof upon payment of the indebtedness, and represents the deceased for the purposes of taxation.

ID.—BUSINESS SITUS—SECURITY FOR LOAN.—The recognized exception to the taxation of personal property at the domicile of the owner, in favor of property having a permanent business situs in another state, in the business of the owner carried on therein, has no application to the case of the mere hypothecation of stocks and bonds in another state as security for a loan.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinion.

Wilson & Wilson, for Appellant.

Franklin K. Lane, City Attorney, and William I. Brobeck, Assistant City Attorney, for Respondent.

CHIPMAN, C.—Action to recover certain taxes, paid under protest, upon certain stocks and bonds situated in New York city. Defendant had judgment on the demurrer to the complaint, from which this appeal is prosecuted. It appears from the complaint that at his death plaintiff's testator was the owner of a large number of stocks or shares and certain bonds of foreign corporations, all of which, except certain described shares of stock, were on and prior to the first Monday in March, 1894, in the state of New York, and pledged as collateral security for the payment of a loan, "and were not on and prior to said date, and thence hitherto never have been, in the possession of this plaintiff as executrix as aforesaid"; that before the assessment in question plaintiff "made a formal statement in writing to said assessor that the said property so assessed by said assessor to this plaintiff as said executrix was not at any time on or since said first Monday in March, 1894, in the possession of said estate . . . . or of this plaintiff as executrix," except as above stated, and that "this plaintiff as such executrix did not have in her charge, possession, or control the personal property or any part thereof so assessed," except as above shown; that plaintiff appeared before the board of equalization and made application "to strike out the said assessments, and fully set forth the facts upon which it was claimed that the assessments or valuations should be stricken out."

The personal property involved is divided into three classes: 1. Shares of stock of foreign corporations, the certificates of which were physically in the possession of the executrix, in San Francisco, at the date of the assessment; 2. Shares of stock of foreign corporations, the certificates of which were not within the state nor in the actual possession of the executrix on the tax day, but were in New York city, where they were held in pledge as collateral security for certain advances made thereon prior to the testator's death, the amount of which advances does not appear from the complaint; 3. Bonds of foreign corporations similarly situated to the shares last above named.

1. As to the assessment of the property falling within the first classification, the learned counsel for plaintiff make no point in their brief. This property is clearly taxable in this state. (*Estate of Fair*, 128 Cal. 607, and cases therein cited. See, also, *Mackay v. San Francisco*, 128 Cal. 678, and cases therein cited, and *Mackay v. San Francisco*, 113 Cal. 392.)

2. Plaintiff does not attempt to distinguish between the stocks and bonds which were outside the state before the death of plaintiff's testator, and we see no ground upon which the one may and the other may not be taxed; the same principle must govern both.

Appellant contends that so far as the executrix was concerned, these stocks and bonds had a situs outside of this state, and were never in her possession or control, and are, therefore, not taxable here; that under sections 1613 and 1615 of the Code of Civil Procedure, the executrix is chargeable only with such property as may come into her possession, and is not responsible for what she cannot collect. It is stated in the brief of counsel that upon her appointment as executrix plaintiff filed an inventory and appraisement, and, as was her duty, included therein a list of the stocks and bonds in question which she had been informed were in New York city, pledged as aforesaid, but that she never had the property in possession or under her control, and is not accountable to the probate court or to any legatees or devisees for it, nor could she collect commissions on it as executrix, and it cannot, therefore, be taxed here.

We do not see that the extent of the executrix's accountability or liability for the property in her official capacity affects the question of its being liable to taxation. While she has not the possession, she yet has a control in so far that she may pay off the lien and would then be entitled to possession and absolute control. Her pecuniary liability as executrix may be limited by reason of the possession being in another person, and still there remain a responsibility and control. Certainly, the property belongs to the estate and the executrix, having taken it up on her inventory, is charged with a duty to protect and care for it. We are not willing to admit that she would be free from liability should she negligently allow the property to be lost to the estate. But, at most, the circumstance alone of her acting

in a representative capacity can have but little bearing upon the question as to the situs of the property; that situs is in California, as we shall see under the general rule laid down in this state unless for some reason it can be excepted therefrom.    In short, it seems to us that the case stands as if the testator were alive and the property had been taxed to him.    Plaintiff represents him for purposes of taxation while representing his estate as executrix of his will.

Appellant cites several cases and quotes from Desty on Taxation to the point that it is the actual situs of the personal property and not the domicile of its owner that determines where the tax should be laid.    It is not necessary to enter upon the discussion of this proposition.    It has been expressly held by this court, quite recently, that bonds of a West Virginia railroad company, which had never been physically present in this state, but were kept in New York city, or elsewhere at the east, have their locality or situs for the purposes of taxation "at the place where they are held—that is, owned." (*Estate of Fair, supra.*   See, also, *Mackay v. San Francisco, supra.*)    The testator in the present case died while a resident of California, and in California his estate is being administered by his executrix; among other of the properties of her testator the executrix inventoried and thereby charged herself with the personal property in question as part of the estate committed to her charge.    Unquestionably, this property is "held—that is, owned" in California, and has "its locality for purposes of taxation at the place" where so owned, unless the general rule is subject to modification or is inapplicable where the stocks and bonds, as in the present case, were pledged by the testator in his lifetime as collateral security without the state.    In *Estate of Fair, supra,* it was said that there was an exception to the rule there laid down, which had received extensive recognition, namely, "where the paper evidences of debt are in the possession and control of an agent of the owner in a state foreign to the domicile of the latter, and are held by the agent for management in the course of the permanent business of the owner, as, for example, to collect the money to become due thereon and to reinvest it, the securities are deemed taxable at the domicile of such agent."    The cases cited as so holding are *Callin v. Hull,* 21 Vt. 152 (the leading case);

*People v. Smith,* 88 N. Y. 576; *Finch v. York Co.,* 19 Neb. 50[1]; *Goldgart v. People,* 106 Ill. 25. Appellant contends that if these securities may have a "business situs" in New York, under the circumstances last above cited, "*a fortiori* they should not be assessed to the executrix when they are held by a pledgee adversely to her, and when she has absolutely no control over the same." But it will be observed that the exception to the general rule assumes that the securities "are held by the agent for management in the permanent business of the owner," at the place where they are held; and as was said in *Mackay v. San Francisco, supra,* the investment and reinvestment is "in such manner that the property or credits come in competition with the capital of the citizens of the state in which the agent resides." In the instance of securities thus sent away as the basis for a permanent business in a foreign state, the accumulations to be there invested and reinvested, and the principal to remain as the source of income for the investments, the case is quite different from that of a temporary hypothecation as security for a loan. In the one case there is a transfer of capital from the owner's residence to the foreign state, there to be used in prosecuting a permanent business, and for the purposes of taxation for that reason is held to have a "business situs"; in the other case, the transfer is for a specific and temporary purpose that may be accomplished in a brief space of time, and may be, and presumably is, to aid the business of the owner at his place and residence. The reasons for creating an exception, in favor of the "business situs" have no application to the case here, and furnish no argument *a fortiori,* or otherwise, for making an exception to the rule.

We are cited to Story on Conflict of Laws, section 550, where it is written: "Although movables are, for many purposes, to be deemed to have no situs except that of the domicile of the owner, yet, this being a legal fiction, it yields whenever it is necessary for the purposes of justice, that the actual situs of the thing should be examined." Appellant also cites *Green v. Van Buskirk,* 7 Wall. 140, and adds: "The case at bar is clearly such a case, where an examination as to situs is necessary for the purposes of justice." Waiving the question whether Mr.

---

[1] 56 Am. Rep. 741.

Story referred to intangible property such as stocks and bonds when he spoke of "movables," we find no peculiar circumstances in this case that would seem to make it necessary to examine the situs of the property in order to do justice. It is quite common in all parts of the United States for business men, engaged in large operations, as was Governor Stanford, to resort to the principal or some other money center in a foreign state for financial aid, and the pledging of intangible securities is the common means of obtaining such assistance. Sometimes money is borrowed to nearly the full face value of the security (depending upon its stability and character); sometimes on a small margin of that value. If the rule contended for by appellant were adopted, it would furnish an opportunity to escape taxation at the place where the securities are owned by pledging them in a foreign state for a merely nominal loan. We are not informed by the complaint of the circumstances attending the pledging of the securities here in controversy. Even if it be conceded that where the full value of the securities has been borrowed, an exception might be made (which we by no means would be understood as deciding) no such circumstance is here presented. So far as we know, the equitable interest of the estate in these securities may be equal to nine-tenths of their value, or even more.

The Political Code, section 3629, provides that the assessor "must assess such property (i. e., taxable property) to the persons by whom it was owned or claimed, or in whose possession or control it was, at 12 o'clock meridian, of the first Monday in March next preceding"; and the constitution provides that all property shall be assessed "to the person by whom it was owned or claimed, or in whose possession or control it was" on the tax day. (Const., art. XIII, sec. 8.) Shares of stock and bonds pledged as collaterals to secure advances made thereon are assessable in the name of the pledgor.

At his death plaintiff's testator was the owner of the shares and bonds by him pledged; they became part of his estate and were inventoried as such, and it must follow that they were property "owned or claimed" by appellant as executrix on the statutory tax day, and to her the law directs the assessment to be made. In the state of Ohio the assessment is required

by law to be to the person in the possession or control of the property. In *Ratterman v. Ingalls,* 48 Ohio St. 468, defendant owned certain stocks which he had pledged as collateral security for loans, with power in the pledgees to cause a transfer of the stock to their own names and to sell if the loans were not paid. It was contended that the shares could not be taxed to the owner because they were not in his possession or under his control within the meaning of the Revised Statutes, sections 2730, 2736, 2737. The court said: "We are of a contrary opinion. The books of the company showed the shares to be in the name of the defendant, and he was the real owner. He had the power to resume absolute control by paying off the indebtedness. It is not the policy of our law to assess taxes upon pledged property against the pledgee, and the language of the sections referred to will not, in reason, bear so literal a construction." (Citing *Waltham Bank v. Waltham,* 10 Met. 334; *Tucker v. Aiken,* 7 N. H. 113.)

It will be admitted that all property not used for some excepted purpose should bear its share of the public burdens and it must be admitted that the securities in question should pay taxes somewhere. Doubtless the testator gave his note or some evidence, for the advances, to the New York pledgee, and as his property the pledgee should pay taxes in New York on that note or other evidence of the debt. But it would be gross injustice to compel him to pay tax on the securities held by him in which he has no interest except as security. It was so held in *Gibbins v. Adamson,* 5 Kan. App. 90, where plaintiff, a resident of Kansas, having given his own note for two thousand eight hundred dollars to a resident of Missouri, and afterward indorsed a note secured by mortgage on Kansas lands and assigned the note and mortgage to the resident of Missouri as collateral security, and they were thereafter held continuously until after the tax day in Kansas. The collateral note was taxed in Kansas.

We are clearly of the opinion that upon the complaint presented in this case the demurrer was rightly sustained and the judgment should be affirmed.

Cooper, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment
is affirmed.         Temple, J., Henshaw, J., Garoutte, J.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in
Bank.