[Civ. No. 2576.   Second Appellate District.—September 7, 1918.]

## L. D. LOWRY, as Executor, etc., Appellant, v. COUNTY OF LOS ANGELES, Respondent.

TAXATION—STOCK OF FOREIGN CORPORATION—LEGAL TITLE IN FOREIGN TRUSTEES—SITUS.—Where a testator, owning stock in a foreign corporation, had in his lifetime transferred the legal title to non-resident trustees, domiciled where the corporation was organized, and where it had its principal place of business, and had given the trustees full power to hold, manage, and control the stock, vote it, and collect the dividends, and to sell, transfer, or otherwise dispose of it, the stock held by the trustees was property having its *situs* in the state of their domicile, and is not to be considered as within the jurisdiction of the taxing power, and his executor could recover from the county a tax assessed upon it in California which he had been required to pay.

ID.—DOUBLE TAXATION NOT FAVORED.—Double taxation is never favored unless clearly required by the statute of the particular state which claims that right.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Leslie R. Hewitt, Judge.

Jones & Bennett and James S. Bennett, for Appellant.

A. J. Hill, County Counsel, and Robert B. Murphey, Deputy County Counsel, for Respondent.

JAMES, J.—A demurrer to the complaint of plaintiff was sustained and plaintiff declining to amend, judgment followed in favor of the defendant.   The appeal is from the judgment so rendered.

The facts which we will detail are fully expressed in the complaint: In January of the year 1912 William Morgan died.   He was at that time a resident of the county of Los Angeles.   In February, 1912, his last will was duly admitted to probate and the appointment of plaintiff as executor thereof confirmed.   Morgan, in his will, bequeathed his interest in two thousand shares of the capital stock of a safety vault company (that being a corporation organized and existing under the laws of Illinois and having its principal place of business at the city of Chicago) to three persons, the in-

terest being divided by apportioning 750 shares to each of two of such persons, and five hundred shares to the third. The person to whom the interest in five hundred shares of the stock was bequeathed, at the time of the death of Morgan, resided in California. One of the other two was and has continued to be a resident of the state of Illinois, while the third was a resident of the state of Illinois up to the twentieth day of November, 1912, and thereafter became a resident of the state of California. On the 3d of March, 1914, the superior court in probate entered its order decreeing that the legacies to the three persons referred to were specific legacies and ordered the distribution thereof. The assessor of the county of Los Angeles made no assessment for the year 1912 as against the interest of Morgan in the shares of stock, but in the year 1913 an assessment was entered against the executor of the estate wherein the total number of shares of stock were assessed at a net valuation of two hundred thousand dollars, and by reason of the stock having been omitted from the assessment in the year 1912, the assessor doubled the valuation for the year 1913 and levied an assessment as for a total value of four hundred thousand dollars and a total tax of $6,280, which the executor, the plaintiff here, was required to pay. This action is brought to recover from the county that sum of money on the ground that the assessment was illegal and void because the property attempted to be assessed was not property having a *situs* within the state of California, but was property in the hands of trustees all of whom were residents of the state of Illinois. The further facts appearing by the complaint are: That in the year 1907 William Morgan, being then the owner of the two thousand shares of stock heretofore mentioned, entered into an agreement by which he transferred to the three trustees in Illinois the shares of stock. Among other terms, the trust agreement contained these provisions:

"This conveyance is made to the grantees as trustees, upon the following uses, purposes and trusts: To have and to hold said stock, to manage and control the same, to vote said stock in their discretion, to collect the dividends thereon and, from said dividends, to pay taxes, municipal or other governmental charges, if any, thereon, to pay court and other costs and expenses, and fees of attorneys for services concerning or in connection with litigation, if any, concerning this agreement

or the stock herein referred to or the rights and duties of the trustees hereunder, and to pay the net income thereof, and of any share or shares hereof, as and when the said income shall be collected, to the first party or the owner or owners of the beneficial interest or interests in said stock or said share or shares thereof, or the legal representative or representatives of said owner or owners, during the continuance of this trust. The trustees shall have full power to sell, transfer, or otherwise dispose of said stock, or any share or shares thereof, at any time prior to the termination of this trust, upon, but only upon the joint written agreement of the trustees, on the one side, and the first party or the owner or owners of the beneficial interest or interests in said stock or said share or shares thereof, or the legal representative or representatives of said owner or owners, on the other side. And in the event of a sale, transfer or other disposition of said stock or of any share or shares thereof, the proceeds of any such sale, transfer or other disposition shall be by said trustees transferred, set over and delivered to the said first party, or the owner or owners of the beneficial interest or interests in said stock, or in said share or shares thereof, or the legal representative or representatives of said owner or owners, freed from the obligation of this trust. . . . This trust shall continue in force for fifteen (15) years from the date hereof, and until there shall have been made payment by said corporation of its entire bonded indebtedness, and of any extension thereof, and of any renewal thereof, and of any extension of any part thereof, or of any renewal of any part thereof, or of any new bonded indebtedness of said corporation but not for a longer time than twenty-one (21) years from the date of the death of the last survivor of (the trustees), excepting that this agreement may be terminated at any time as to said stock or any share or shares of said stock by the joint written consent of all the trustees, on the one side, and the first party or the owner or owners of the beneficial interest or interests in said stock or said share or shares thereof, or the legal representative or representatives of said owner or owners, on the other side; and, upon the termination of this trust, as to said stock or any share or shares thereof in reference to which this trust has been terminated, held by the trustees, their successors, successor, survivors or survivor, shall be transferred and set over to the first party or to the

owner or owners of the beneficial interest or interests in said stock or in said share or shares of said stock, or to the legal representative or representatives of said owner or owners.''

Appellant insists that under the facts stated the legal ownership of the stock was in the trustees and for purposes of assessment its *situs* was therefore in the state of Illinois, where the trustees had their residence and where the stock was held. It is clearly expressed by the complaint that the assessment made was upon the whole value of the full number of shares, and was not an assessment upon dividends or upon any contingent or equitable interest of the testator. Respondent supports the right of the county to collect the tax with the argument that as to personalty the presumed *situs* is always at the domicile of the owner, and that such legal *situs* is not affected by the fact that the personal property may have its physical location outside the limits of the state. It is true that it is a general rule that the domicile of the owner determines the *situs* of the personalty of which he may be possessed. This rule has its exceptions. Generally, we think it may properly be said that for the purpose of distributing the estate of a decedent it will be presumed that his personalty, or any interest that he may have therein, is situated at the domicile maintained by him at the time of his demise. This rule is shown by the decisions not to have invariable application and for purposes of taxation the *situs* of personalty has been determined under particular facts to be different. In *Catlin* v. *Hull,* 21 Vt. 152 (found in 8 Vermont Annotated Reports, p. 150), the court said: ''It is undoubtedly true, that, by the generally acknowledged principles of public law, personal chattels follow the person of the owner, and that, upon his death, they are to be distributed according to the law of his domicile; and in general, any conveyance of chattels, good by the law of his own domicile, will be good elsewhere. But this rule is merely a legal fiction, adopted from · considerations of general convenience and policy, for the benefit of commerce and to enable persons to dispose of their property, at their decease, agreeably to their wishes, without being embarrassed by their want of knowledge in relation to the laws of the country, where the same is situated. But even this doctrine is to be received and understood with this limitation, that there is no positive law of the country, where the property is in fact, which contravenes the

law of his domicile; for if there is, the law of the owner's domicile must yield to the law of the state, where the property is in fact situate. But we do not consider this doctrine, in relation to the *situs* of personal chattels and relating to its transfer and distribution, as at all conflicting with the actual jurisdiction of the state, where it is situate, over it, or with their right to subject it; in common with the other property of the state, to share the burthen of the government, by taxation." The case from which we have quoted is referred to in *Stanford* v. *San Francisco,* 131 Cal. 34, [63 Pac. 145], as being a leading case touching the subject of which it treats. The Vermont court held that property of nonresidents which consisted of notes and choses in action held against individuals of that state, placed in the hands of an agent with power to handle the proceeds, invest, and reinvest, was property within the state and subject to the payment of taxes therein. In that case there had been no transfer of the legal title to the agent, but the agent held the same for the purpose of transacting the business of investing the funds for his principal. In a Rhode Island case, *Anthony* v. *Caswell,* 15 R. I. 159, [1 Atl. 290], the question was "whether a trustee, resident in another state, who has no property as trustee in this state, is liable to taxation in the town where his *cestuis que trustent* reside." The court decided in the negative. Judge Cooley in his work on Taxation, volume 1, page 660, thus declares the rule: "In general, personal property in the hands of a trustee is to be assessed to him at the place of his domicile, and if one of two trustees is a nonresident the trustee living in the state may be taxed in respect to their interests; but such property is often made taxable to the persons beneficially entitled, if they are residents of the state. If the fund is in charge of a court, it is taxable in the jurisdiction having control of it, although personalty having an actual *situs* elsewhere may be taxed where it is." In *Mackay* v. *San Francisco,* 128 Cal. 678, [61 Pac. 382], the court made its decision in accordance with this rule. There the property consisted of bonds which were kept in the city of New York. They came into the control of two trustees, one of whom resided in Nevada and one in San Francisco, by a distribution of the estate of Theresa Fair. Theresa Fair was a resident of San Francisco at the time she died and her will was probated there. The assessment was made after distribution, against

both trustees for all of the bonds held by them, and the court decided that as to the trustee resident in Nevada the assessment was void.    Respondent lays great stress upon the language of the court, expressed in its decision, where it is said: "In *Mackay* v. *San Francisco,* 113 Cal. 397, [45 Pac. 696], these plaintiffs, as executors of the will of Theresa Fair, deceased, contended that the bonds upon which the taxes were levied in this case, or a portion of them, were not property within the state, and not taxable to the estate of Theresa Fair, deceased.    But it was held that the bonds had their *situs* in San Francisco, and were there taxable.    The court said: 'The bonds in question were held here.    Their *situs* was the city and county of San Francisco.    They could not be taxed in Arizona, where the property mortgaged to secure them is situated.'    In that case the court followed the general rule sustained by the weight of authority.    The rule is, that the personal property of decedents is taxed at the domicile of the decedent.    As said by law-writers: 'During the settlement of the estate it must have a *situs* somewhere, and none so appropriate as where the decedent lived.' "    The court goes on to declare that a different situation was shown after the property had been distributed into the hands of the trustees, one of whom was a nonresident, and Judge Cooley's declaration of the general rule is referred to.    We find no difficulty in enforcing an agreement between the holding there made and the contention as advanced by appellant here, and the question may be propounded: Did the fact that the *situs* of Morgan's interest in the stock for purposes of probate, fixed itself at the place of his domicile, also fix the *situs* of the stock for the purpose of an assessment at the same place?    We do not think that such a legal situation as last suggested follows.    We think the situation is no different than had this same assessment been levied against Morgan's stock by the assessor of Los Angeles County during the lifetime of Morgan and while he was domiciled here.    There was not a transfer of interest to the trustees by distribution of the estate under the will, for the trustees for a long time prior to the death of Morgan held the legal title and possession of the stock, and continued so to hold it after his death and at the time distribution was had.    If the assessor could not have assessed Morgan for the stock while he lived, surely then the executor of his estate could not be subjected to a similar assessment.

It seems very clear to us that the stock in the hands of the trustees is within the jurisdiction of the taxing power of the state of Illinois. And to hold that it may be assessed in California also, would be to subject it to double taxation, which is never favored unless clearly required by the statute of the particular state which claims that right. "While it is not practicable to formulate a rule, where the cases depend upon the construction of different state statutes and involve their phraseology, both as to what shall constitute taxable property in the state and as to the place in the state where the personalty shall be assessed, it has been frequently held that where bonds, notes, and mortgages have had an independent *situs* given them in another state, and have been localized there through a resident agent, or otherwise, so as to become subject to the taxing power of that state, they were not subject to taxation in the state of the domicile, unless expressly made so by statute. In other words, it is a rule of construction, repeatedly recognized by the courts in taxation cases, that double taxation will not be presumed to have been intended, and will only be enforced under express mandate." (Judson on Taxation, sec. 425, p. 543.) The decisions of our own state, the leading ones of which we have made reference to, by fair interpretation support this rule. Our conclusion is that the two thousand shares of stock held by the Illinois trustees was property having its *situs* in that state and is not to be considered as within the jurisdiction of the taxing power of California.

The judgment appealed from is reversed.

Conrey, P. J., and Shaw, J., concurred.