[L. A. No. 6725. In Bank.—March 24, 1922.]

WESTINGHOUSE ELECTRIC & MANUFACTURING COMPANY (a Corporation), Respondent, v. COUNTY OF LOS ANGELES, Appellant.

[1] TAXATION — CHOSES IN ACTION — SITUS.—Mere choses in action for the purposes of taxation generally follow and attach to the domicile of the owner.

[2] ID.—EXCEPTION TO RULE.—The exception to the rule that mere choses in action for the purpose of taxation generally follow and attach to the domicile of the owner is where the possession and control of the property have been localized in some independent business or investment away from the owner's domicile, so that its substantial use and value primarily attach to and become an asset of the outside business; in other words, while the nonresident may own the business, the business controls and utilizes in its own operation and maintenance the credits and income thereof.

[3] ID.—FOREIGN CORPORATION—AGENCY IN STATE—WHEN SOLVENT CREDITS NOT TAXABLE.—Where a foreign corporation maintains an agency in this state which is not an independent business, nor an independent branch of the principal business, but a sales agency doing business through, for, and under the immediate control and management of the home office out of the state, orders being filled for the most part directly from the home factories and all contracts being taken in the name of the foreign concern and payable to its order, moneys collected through the agency being deposited to the credit of the home office and not held, paid out, invested, or reinvested by or for the local business, solvent credits arising in the local business are not taxable in this state.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

A. J. Hill, County Counsel, and Gordon Boller, Deputy County Counsel, for Appellant.

Bordwell & Mathews for Respondent.

SLOANE, J.—The plaintiff is a foreign corporation engaged in the manufacture, distribution, and sale of electrical machinery and appliances, with its factories and principal place of business at East Pittsburg, Pennsylvania. It maintains distributing and sales agencies for its products at various commercial centers throughout the United States and in foreign countries. One of these, serving the territory of Southern California, Arizona, New Mexico, and part of Texas, is located at Los Angeles.

The question presented by this appeal is the right of the state of California to levy and collect taxes upon the solvent credits of the corporation arising from sales on credit contracted through this Los Angeles agency.

Such a tax was levied for the year 1918–19 in the aggregate sum of $1,585.66 and paid under protest. This appeal is by the county of Los Angeles from a judgment of the superior court awarding the plaintiff corporation a refund of the amount so paid.

The question presented is a very simple one in its statement, namely, Are these credits, owing to the Pennsylvania corporation, property in the state of California?

Section 1 of article XIII of the constitution of California
directs that "All property in the State," with certain ex-
ceptions not applicable here, "shall be taxed in proportion
to its value." The same section of the constitution defines
the word "property" as including "moneys, credits, bonds,
stocks, dues, franchises, and all other matters and things,
real, personal, and mixed, capable of private ownership."
The only element of uncertainty left is that of location.
Where is the *situs* of these credits for the purpose of taxa-
tion? That proposition, too, so far as the general rule gov-
erning the location of intangible assets for the purpose of
taxation is clearly settled under the decisions of this court.
[1] The rule that mere choses in action follow and attach
to the domicile of the owner, as expressed in the Latin
maxim, "*Mobilia sequuntur personam,*" has been repeatedly
and consistently maintained. (*Estate of Fair*, 128 Cal. 607
[61 Pac. 184]; *Pacific Coast Sav. Soc.* v. *San Francisco*, 133
Cal. 14 [65 Pac. 16]; *Fenton* v. *Edwards*, 126 Cal. 43 [77
Am. St. Rep. 141, 46 L. R. A. 832, 58 Pac. 320]; *Mackay* v.
*San Francisco*, 128 Cal. 678 [61 Pac. 382]; *People* v. *Park*,
23 Cal. 139.)

The latest expression of this court (*Chambers* v. *Mumford*,
187 Cal. 228 [201 Pac. 588]), although arising in the matter
of an inheritance tax upon the right of succession, directly
recognizes the doctrine stated as the settled rule of Cali-
fornia. It denies the right to tax within this state mere
credits and rights of action belonging to nonresidents, though
contracted and owing here and dependent upon the local
courts for their enforcement. It is held that in fixing the
*situs* of intangible assets for purposes of taxation no ground
of distinction exists under the laws of California between
levying a tax on the property and taxing the succession
to property. The question is in either case the *situs* of the
property in this state, and the conclusion reached is that
the rule of "*mobilia sequuntur personam*" has been in force
so long and has been so consistently followed that if it is to
be changed or modified it should be by legislation and not
by the courts.

Appellant's counsel cite as the correct rule a quotation
from *Board of Assessors* v. *Comptoir National*, 191 U. S.
388 [48 L. Ed. 232, 24 Sup. Ct. Rep. 109, see, also, Rose's
U. S. Notes], as follows: "It may be taken as a general rule

of the law of taxation of personal property that such property can only be taxed at the residence of the owner, *or at such place as it has acquired a situs which will subject it to the taxing power of the state where found.*" The exception to the general rule contained in the italicized words of the quotation, while it cannot be gainsaid, sets at large the whole question and makes it necessary to determine under what conditions solvent credits owned by a nonresident may be said to have detached themselves from the domicile of the owner and to have become property in some other jurisdiction.

[2] If we may venture to formulate a general statement of this modification of the rule, it would be that this can only result where the possession and control of the property right has been localized in some independent business or investment away from the owner's domicile, so that its substantial use and value primarily attach to and become an asset of the outside business. In other words, while the nonresident may own the business, the business controls and utilizes in its own operation and maintenance the credits and income thereof.

The case of *People* v. *Home Ins. Co.*, 29 Cal. 533, cited by appellant, does not go further than the principle stated. In the first place the property of the nonresident there held subject to taxation in this state consisted of California state bonds. Municipal bonds and securities of that class, which are recognized as a commodity on the market and pass from hand to hand on delivery, are commonly treated as a species of tangible property in themselves, and, on this ground, have been frequently held taxable as property wherever actually located.

Furthermore, these particular bonds were permanently located in this state by the nonresident owner, an insurance company, under a statute requiring such deposit, and, as is pointed out in the opinion, "are separated from the owner and his domicile and in the hands of an agent in this state, and in the character of property, by the express provisions of the Act requiring the deposit, subject to the jurisdiction of the state." (*McDougald* v. *Lilienthal*, 174 Cal. 698 [L. R. A. 1917F, 267, 164 Pac. 387]; *Murphy* v. *Crouse,* 135 Cal. 19 [87 Am. St. Rep. 90, 66 Pac. 971]; *McDougald* v. *Lowe,* 164 Cal. 107 [127 Pac. 1027].)

In *Lowrey* v. *County of Los Angeles,* 38 Cal. App. 158 [175 Pac. 702], certain shares of corporate stock owned by a resident of this state were held to have been removed from liability to taxation in California, where the legal title thereto had been transferred to nonresident trustees domiciled where the corporation was organized and where it had its principal place of business, and where the trustees were given full power to hold, manage, and control the stock, vote it and collect and disburse the dividends for certain specific purposes. Corporate stock is often given the status of tangible property in the state where the corporation is organized on the theory that the shares represent the actual corporate assets.

The doctrine of a business *situs* apart from the domicile of the owner as we have herein defined it is substantially set out in the opinion of this court in *Matter of the Estate of Fair, supra,* where it is said: "There is an exception which has obtained extensive recognition—where the paper evidences of debt are in the possession and control of an agent of the owner in a state foreign to the domicile of the latter, and are held by the agent for management in the course of the permanent business of the owner, as for example, to collect the money to become due thereon and reinvest it, the securities are deemed to be taxable at the domicile of such agent."

In *Mackay* v. *San Francisco, supra,* a similar statement of the exception to the general rule is made. "The authorities generally agree that where the owner is not a resident of the state in which the credits are situated, and the credits are in the possession and control of a local agent, who holds them for the purpose of transacting a permanent business, and of investing and reinvesting the proceeds from the principal and interest in such a manner that the property or credits come in competition with the capital of the citizens of the state in which the agent resides, that the credits have a *situs* for the purpose of taxation in the place of residence of the local agent."

The distinction we have pointed out is further emphasized in *Stanford* v. *San Francisco,* 131 Cal. 34 [63 Pac. 145], where the court, in commenting upon the foregoing citations from *Estate of Fair* and *Estate of Mackay, supra,* says:

"But it will be observed that the exception to the general rule assumes that the securities 'are held by the agent for management in the permanent business of the owner,' at the place where they are held; and as was said in *Mackay* v. *San Francisco*, the investment and reinvestment is 'in such a manner that the property or credits come in competition with the capital of the citizens of the state in which the agent resides.' In the instance of securities thus sent away as the basis for a permanent business in a foreign state, the accumulations to be there invested and reinvested, and the principal to remain as the source of income for the investments, the case is quite different from that of a temporary hypothecation for a loan. In the one case there is a transfer of capital from the owner's residence to the foreign state, there to be used in prosecuting a permanent business, and for the purposes of taxation for that reason is held to have a 'business *situs.*' In the other case, the transfer is for a specific and temporary purpose that may be accomplished in a brief space of time and may be, and presumably is, to aid the business of the owner at his place of residence."

This seems to have been the precise situation as found by the trial court in the case before us. It was held that the solvent credits subjected to the disputed tax were incident to the business of the corporation in Pittsburg, Pennsylvania, and were therefore not property in the state of California.

[3] We are of the opinion that the facts of the case support the findings and conclusions of the court. The agency maintained by the plaintiff corporation in the city of Los Angeles was not an independent business, nor an independent branch of the principal business of the plaintiff. It was a sales agency, doing business, it is true, on a large scale, but doing business through and for and under the immediate control and management of the home office at Pittsburg. The Los Angeles establishment maintained an expensive office, a warehouse carrying a large stock of the products of the home factories, employed a large force of agents and office assistants, but in the plan of its operation was not greatly different from that of some more modest foreign manufacturer who might be represented by a sales agent or two with a line of samples in the commercial rooms

of a downtown hotel. Salaries, office and warehouse rent, operating expenses, with the exception of incidentals met by a local petty cash account, were paid from the home office. Orders were filled for the most part directly from the home factories, the warehouse stock being used only for smaller and emergency orders. All contracts were in the name of the Pittsburg concern and payable to its order. If moneys were collected through the local agency they were deposited to the credit of the home office, and were not held, paid out, or invested or reinvested by or for the local business. They became assets at once of the Pittsburg concern and were as likely to be expended in Calcutta or London as in the Los Angeles district. The business done through this local agency undoubtedly was in competition with California business enterprises in similar lines, but only in the same way as that of any eastern establishment carrying on a mail order or sales agency business. In short, the plaintiff corporation was conducting this branch of its business through this local agency upon its general corporate capital, for the general benefit of its central factories, and the solvent credits here sought to be taxed were at all times part of the general corporate assets with no more relation to the Los Angeles agency than if they had been contracted in Canada or Cuba.

We find nothing within the scope of California authorities governing the *situs* of accounts or choses in action to authorize taking these credits out of the operation of the general rule.

We have not attempted to review the authorities from other states, some of which have gone further than the announced policy of this court would justify, but most of which in the facts presented are clearly distinguishable from the case before us.

In the absence of further legislation changing the status of intangible assets in this state for purposes of taxation, we see no reason for departure from the application of the rule consistently followed by this court, as herein stated.

We have not considered the item of interest included in the judgment, for the reason that the parties to the action have stipulated that such allowance of interest be eliminated.

The judgment will be modified by striking out the allowance of interest, and as so modified is affirmed.

Wilbur, J., Waste, J., Richards, J., *pro tem.*, Lawlor, J., Shurtleff, J., and Shaw, C. J., concurred.

Rehearing denied.

All the Justices concurred.