## THE BURLINGTON LUMBER COMPANY

*v.*

## FRED WILLETTS, Collector.

*Filed at Ottawa November 13, 1886.*

1. TAXATION—*as to property in transit from one State to another— or in case of temporary detention while in transit.* Property in course of transportation from one State to another, over one of our navigable rivers, or over any of the public highways of the country, is not liable to taxation as it passes over such highways, by the State authorities along the lines thereof; nor, it would seem, if property, while in the course of transportation over one of our navigable rivers, should be detained by low water, or ice, or other cause, would it be liable to be taxed by the authorities where the detention occurred.

2. SAME—*of the situs of property, for purposes of taxation—and herein, of corporate taxation.* A lumber company located at Burlington, Iowa, left a large quantity of saw logs in a harbor or bayou on the Illinois side of the Mississippi river for safe keeping, until needed, and had leased the land along the shore and employed an agent in this State to take care of them, and it appeared that the company had kept logs at such place for several years before, and that they were kept at such place because they could be kept there in greater safety, and at a less expense than at Burlington. *Held,* that such logs were subject to taxation in this State. The property had a *situs* here, rendering it subject to taxation under State authority. The owners might be deemed to be engaged in business in this State, so far as the storage of the property was concerned.

3. But an incorporated village has no authority of law to impose a corporate tax upon property thus situated, and which is without its limits, and being void, if levied, its collection may be enjoined.

APPEAL from the Circuit Court of Mercer county; the Hon. JOHN J. GLENN, Judge, presiding.

Mr. JOHN C. PEPPER, for the appellant:

The property had no such business *situs* as to be taxable in this State. *Dunlieth* v. *Reynolds,* 53 Ill. 45; *Herron* v. *Keeran,* 59 Ind. 472; *Parker Mills* v. *Comrs. of Taxes,* 23 N. Y. 242; *Blount* v. *Munroe,* 68 Ga. 51; *Lee* v. *Templeton,* 6 Gray, 679; *Desmond* v. *Machiasport,* 48 Me. 478; *Ells-*

--------

*worth* v. *Brown,* 53 id. 519; *Loud* v. *Charlestown,* 103 Mass. 278; *Walton* v. *Westwood,* 75 Ill. 125; *Vogt* v. *Ayer,* 104 id. 583; *Goldgart* v. *People,* 106 id. 25; *Hays* v. *Steamship Co.* 17 How. 596.

There is no doubt as to the illegality of the city tax. If part of a tax is illegal, the court should enjoin the illegal part. *Taylor* v. *Thompson,* 42 Ill. 17; *Briscoe* v. *Allen,* 43 id. 296.

Messrs. BASSETT & WHARTON, for the appellee:

The *situs* of this property for taxation was in New Boston township. It was there because the owners could keep it there for less expense, and with less liability to loss, than at Burlington. *Dunlieth* v. *Reynolds,* 53 Ill. 45; *Walton* v. *Westwood,* 73 id. 129.

The appellant also had a place of business at New Boston, to the extent of placing and keeping its logs there. It leased property there for that purpose, and hired and placed a person there to receive, watch and care for the property, and send it to the mills at Burlington when needed. This was, in that sense, a business that was beneficial to the owners. This gave the property a *situs* there for the purpose of taxation. *Board of Supervisors* v. *Davenport,* 40 Ill. 197; *First Nat. Bank* v. *Smith,* 65 id. 45; *Selz* v. *Cagwin,* 104 id. 647; *Irvin* v. *Railroad Co.* 94 id. 105; *City of St. Louis* v. *Wiggins Ferry Co.* 11 Wall. 423.

It is claimed by the appellant that these logs were not within the corporate limits of New Boston, and that the city tax, in any event, is not legal. That proposition may be correct, and if the other taxes had been tendered or paid, then an injunction to restrain the collection of the illegal taxes would have been proper. But there was no offer to pay the State, county or township taxes, and there is no offer in the bill to pay it. The bill is to restrain the collection of all the taxes, and although a part of the taxes may have been

illegal, still the bill can not be sustained. *Johnson* v. *Roberts,*
102 Ill. 658; *Swinney* v. *Beard,* 71 id. 31; High on Injunctions, secs. 497, 498.

It was the duty of these owners to appear before the town
auditors or board of supervisors, to redress any grievances
for over-assessment, or for the assessment of property that
was exempt. *Preston* v. *Johnson,* 104 Ill. 628; *Felsenthal* v.
*Johnson,* id. 23; *Mix* v. *The People,* 116 id. 265; *Humphreys*
v. *Nelson,* 115 id. 45; *Railroad Co.* v. *Johnson,* 108 id. 11;
*Johnson* v. *Roberts,* 102 id. 655.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by the Burlington Lumber
Company, to enjoin the collection of a tax, upon an assessment made by the assessor of the town of New Boston, in
Mercer county, for the year 1885, on a certain quantity of
logs which were in the New Boston harbor, or bayou, on the
1st day of May, 1885.

There is no substantial dispute between the parties in regard to the facts. The Burlington Lumber Company is a
corporation organized under the laws of Iowa, with its place
of business at Burlington. The corporation is engaged in the
business of manufacturing lumber. It buys logs in Wisconsin
and Minnesota, where they are rafted, and towed down the
Mississippi river to Burlington, and there sawed into lumber
at the mills of the company. In the spring and summer of
1884, the company purchased logs, which were rafted in Boef
slough, near the mouth of the Chippewa river, in Wisconsin.
After the logs were rafted, they were towed down the river by
a steamer. The vice-president of the corporation, on cross-
examination, testified: "Some of the logs were stopped on
the way. We could not stow all we bought, at or near Bur-
lington, but it was more convenient and safer to leave them
in the harbor at New Boston. After the boats were started
with the rafts, the boat would be instructed to leave them at

New Boston or other place, and there they would be left until wanted. The first raft was put in, October 3, 1884. That was there in May, 1885. There were 3,000,000 feet there that winter. We had no logs at Burlington in winter of 1885. We have used the harbor for nine years. We could keep logs there safer than at Burlington, and with less expense. Corporation did not own the land. It leased shore privileges,—that is, we pay something, rather than have bother or trouble, to those who own the land, same as if we used a wharf. We have been renting shore privileges several years. The right to tie rafts on his shore was rented of Prentiss. The corporation had E. L. Willits employed to look after logs, and see that none got away. When we wanted logs we sent after them by steamer. Willits was the only man we had employed or that had charge of them there." Edward L. Willits testified: "I was in the employ of the Burlington Lumber Company in the fall, winter and spring of 1884 and 1885. Was employed by the month to keep logs afloat and see that none got away. Got $50 per month. I know the situation of the logs that winter and spring. There were four rafts, and about 750,000 feet in each." Cross-examined: "I have been employed five years to look after all rafts. I give receipt to boat, deliver to boat and take receipt. I have control while there. I had moved them across slough to keep them afloat. The Burlington Lumber Company put a raft in Sturgeon bay on the 1st of May. Part of it is there yet."

It is claimed that the property in question, under the evidence, was *in transitu,* and, therefore, not taxable in this State. It is a plain proposition, that property in course of transportation from one State to another, over one of our navigable rivers, or over any of the public highways of the country, is not liable to taxation as it passes over such highway, by the State authorities along the line of such highway, and we think it is equally clear, that if property, while in the course of transportation over one of our navigable rivers, should be de-

tained by low water or ice, or other cause, it would not be liable
to be taxed by the authorities where the detention occurred.
Any other rule would have a direct tendency to obstruct com-
merce between States, which, of course, could not be done
under our system of laws. But the question here presented
is, whether the property, when assessed, was in course of
transportation over a public highway. We have given the
evidence bearing upon this point that consideration which the
importance of the question demands, and we have reached
the conclusion that the property was not *in transitu*. For nine
years the complainant had used the harbor at New Boston as
a place of safety for depositing logs during the winter. Land
along the shore had been leased, where the property was
anchored, and a man employed, who was placed in the pos-
session of the property. At the time the boats started from
Wisconsin with the rafts, to convey them down the river, the
destination of the property had not been determined by the
company, but after departure, as stated by the vice-president
in his evidence, the boats were then instructed to leave a part
of the rafts at New Boston, and there they would remain until
wanted at the mill in Burlington, when a steamer would be
sent for them. New Boston harbor, or Sturgeon bay, as it
is usually called, is only about thirty miles up the river from
Burlington. It is very accessible, and it seems plain that the
company had selected the bay as a place of storage for its
logs,—a place where its property could be shipped, and kept
in safety until such time as it was needed at the mills in
Burlington. Indeed, for all practical purposes, it may be
said that the transit of the property ended at New Boston.
When the logs reached that point, they were located there
for an indefinite time. New Boston harbor thus became the
destination of the property, and so remained until such time
as the corporation saw proper again to place the property in
transit. No other reasonable construction can be placed upon
the evidence.

The first section of our Revenue law provides, that all real and personal property in this State shall be assessed and taxed, except such as is by the act exempted. Here was a large quantity of personal property, located in this State on leased premises, in the hands of an agent of the owner, and upon what principle it can escape taxation is not apparent, unless the plain language of our Revenue law is disregarded. It is true, that the owners of the property were not manufacturing the logs into lumber in this State, or engaged in selling the lumber here, but the property was kept at New Boston because it was more profitable for the owners to keep it in store there than at Burlington. If kept at the mills in Burlington it would be liable to loss upon the breaking up of the ice in the river, in the spring, while at New Boston it was safe, at a trifling expense. The property was therefore kept at New Boston on account of the profit to the owners to keep it there. The company made money by the transaction. Here the Burlington Lumber Company had premises leased, large amounts of valuable property placed on the leased premises, in the hands of hired agents, resulting in profit to the company, and yet it is claimed it had no place of business in this State. This claim is unreasonable. We think, when all the circumstances are considered, it may be said that the company was engaged in a business here, beneficial to itself. If, then, the company had this property located in our State, and it was here for profit, and it was so located as to claim the protection of our laws, the property, in our opinion, had a *situs* here, and was liable to taxation.

We have been cited to the late case of *Coe* v. *Town of Earl*, decided in the Supreme Court of the United States, as having an important bearing on the question involved. We have examined that case, and, as we understand the decision, the question here involved is not considered or decided in that case. The point there decided, as we read the opinion of the court, is, in substance, this: In order to exempt property

from taxation on the ground that it is in course of transportation, the property must be actually shipped,—that placing it together for shipment is not sufficient.

There is, however, one error in the record. The taxes which complainant attempted to enjoin, were, in part, levied by the incorporated town of New Boston. The property, however, was never within the incorporated limits of New Boston, and so far as it is concerned, it acquired no jurisdiction over, and has no right whatever to impose a tax on, the property. The corporation tax was void, because New Boston had no right to assess the property, and being void, the complainants had a clear right to file a bill to enjoin this part of the tax.

As to the corporation tax of New Boston the decree will be reversed. In all other respects it will be affirmed, and the costs of this court will be equally divided between the parties.

*Decree reversed in part and in part affirmed.*