COLLINS & WALLACE V. N. J. GREEN, *Treasurer, et al.*

(Filed June 30, 1900.)

1.   TAXATION—*Transient Property Act—Indian Reservation.* Under Section 1 of the act of 1895 pertaining to taxation of transient property and as reenacted in 1897, which provides that, "when any personal property shall be located in any country in this Territory after the 1st day of March of any year, which shall acquire an actual situs therein before the 1st day of September, such property is taxable therein for that year, and shall be assessed, and placed on the tax-roll, and a tax collected as provided by this act; Provided, that this act shall not apply to live stock brought into this Territory after the 1st day of November and kept therein until the 1st day of April following for the express purpose of being grain-fed and prepared for market, subject to the quarantine regulations." Cattle brought into the Osage Indian Reservation, which was attached to Pawnee county for judicial and taxing purposes, between March 1st and September 1st of 1898 for the purpose of grazing were properly taxable in Pawnee county for that year, and the owners thereof who had not settled in that county could not have them relieved from taxation by filing an affidavit with the assessor to the effect that such cattle had been listed for taxation in the State of Texas for the same year and prior to the time that they were brought into Oklahoma. As to whether or not one who settles in a county of this Territory between March 1st and September 1st and brings property into the Territory with him, can be relieved from paying taxes on such property by filing an affidavit that it had been previously listed for taxation in another state, we express no opinion.

2.   INJUNCTION - *Denied. When.* Under the rule that he who seeks equity must do equity, a court will not enjoin a portion of a tax even though such portion is illegal, unless the petitioner tenders or offers in his petition to pay that portion of the tax which the court may find to be just and legal.

(Syllabus by the Court.)

*Appeal from the District Court of Pawnee County; before Bayard T. Hainer, District Judge.*

*Dale & Bierer* and *T. J. Leahy,* for appellants.

*Horace Speed* and *Matt Williams*, for appellees.

Opinion of the court by

BURWELL, J.:    Collins and Wallace filed their petition in the district court of Pawnee county praying that certain taxes assessed and levied against their cattle in the Osage Indian reservation be enjoined for the reason that the same was illegal and void.    To this petition the defendants demurred.    The court sustain]ed the demurrer and the plaintiffs having elected to stand on their petition, the court entered judgment denying the injunction and taxing the costs to the plaintiff.    From this judgment they appealed.    The Osage Indian reservation was attached to Pawnee county for judicial and taxing purposes in' 1898 at the time the taxes sought to have enjoined were assessed and levied.

The first contention of the appellants is that prior to the date on which their cattle were brought into this Territory they had been listed for taxation in the state of Texas; that by reason thereof they were not liable for taxes in Oklahoma for the same year under the provisions of sec. 3 of the transient property act of 1895, and that they had no opportunity to make an affidavit setting forth the fact of the assessment in Texas, and that even if they had made such affidavit the assessor would not have omitted their property from such assessment.

In order that a clear understanding of the law may be had, it will be necessary to briefly notice the language of the different statutes:

In 1895 the legislature enacted what is known as the transient property act (art. 5. of ch. 43, Session Laws, 1958.)   Section 1 is as follows:

"When any personal property shall be located in any county of this Territory after the 1st day of March of any year, which shall acquire an actual situs therein before the 1st day of September, such property is taxable therein for that year and shall be assessed and placed on the tax roll, and the tax collected as provided by this act."

In 1897 the legislature amended this section by adding this clause:

"Provided, that this act shall not apply to live-stock brought into this Territory after the 1st day of November and kept therein until the 1st day of April following, for the express purpose of being grain fed and prepared for market, subject to the quarantine regulations."

"Section 2. Whenever any live-stock shall be located in this Territory for the purpose of grazing, it shall be deemed to have acquired an actual situs therein as contemplated by this act."

"Section 3. When any person, association or corporation shall settle or organize in any county in this Territory and bring personal property therein after the 1st day of March and prior to the 1st day of September, in any year, it shall be the duty of the assessors to list and return such property for taxation that year, unless the owner thereof shall show to the assessor, under oath, that the same property has been listed for taxation on that year in some other state, or county in this Territory, etc."

The remainder of the section refers to the manner of assessing equalization, etc.

Section 1 provides in effect that all property of every kind or character which is brought into this Territory between the dates of March 1st and September 1st, and which acquires an actual situs therein before the last named date, is taxable for that year; and sec. 2 provides that live-stock which shall be located in this Territory for grazing purposes shall be deemed to have acquired an

actual situs herein as contemplated by the act. These two sections are plain and mean just what the language says and are not susceptible of any other construction. Section 1 fixes a general rule for all property brought into the Territory between the two dates mentioned, but the first sentence of sec. 3, which is quoted above, makes an exception to the general rule fixed in sec. 1. The language of this sentence is that "when any person, association or corporation shall settle or organize in any county in this Territory, and bring personal property therein after the 1st day of March and prior to the 1st day of September, in any year, it shall be the duty of the assessor to list and return such property for taxation that year, unless the owner thereof shall show to the assessor, under oath, that the same property has been listed for taxation on that same year in some other state or county in this Territory."

In commenting upon this sentence Justice Tarsney, speaking for this court in the case of *Wilson v. Wiggins et al*, (7 Okla. 522) said:

"Therefore although the act in question is entitled 'Taxation of transient property,' the scope and purposes of the act is much broader than its title imports. Transient property is not alone within its purview, but it was intended to reach and tax the property. of the settler and of corporations organized in the Territory, although brought in for permanent use, as well as the transient property of such settler or corporation, or of a non-resident. The first section of the act would seem to be broad enough to comprise all such classes of property, regardless of the residence or non-residence of the owner; but it was evidently in the mind of the legislature that that section might be construed to include only transient property, and not include property brought in by actual settlers or domestic corporations for perma-

nent use in the Territory, and therefore it made special provision for the latter class in sec. 3 of the act; and while the language of this latter section would seem to limit an exemption from taxation to the property of such settlers and corporations, upon a showing that such property had been taxed elsewhere, we think such was not the intention of the legislature; that the ambiguity, if any, arises from the inaptness with which the subject-matter of the different sections are connected."

After mature deliberation we believe the above to be an incorrect interpretation of sec. 3. The language used in the first sentence of sec. 3, cannot be given the construction placed upon it in the Wilson-Wiggins case without reading into it a meaning which the language itself excludes. It is certainly clear beyond any question of doubt that the legislature intended to say that if any person, association or corporation shall settle in any county in this Territory and bring personal property herein after the 1st day of March and prior to the 1st day of September, such property shall not be taxed if the owner thereof will show to the assessor, under oath, that the property has been listed for taxation for the year in some other state, or county in this Territory.

As to whether or not the same property in the absence of such a statute, can be taxed in two different counties of the territory for the same year, we will not consider; that question is not before us; nor is it necessary for us to determine as to whether the legislature can exempt from taxation property which has been listed for taxation in another state simply because the owners thereof, between March 1st and September 1st of the same year, have settled in a county of the Territory and brought such property with them, when property belonging to those who have not settled in the Territory,

sent into the Territory during the same period, is subjected to taxation. It is sufficient in this case to say that sec. 1 of the transient property act is general and includes within its provisions all of the property brought into the Territory, whether by resident or non-resident, while the first sentence of sec. 3 of that article is an exception to the general rule provided in sec. 1, and if the general rule and the exception cannot stand together, the exception must fall, leaving the general statute in full force and effect. At any rate, the plaintiffs in this case do not fall within the exception of sec. 3, as they do not claim that they settled in any county in this Territory and brought their property with them; and, even if they had known that their property had been assessed and had failed their affidavits with the assessor, they could not have been discharged from the payment of the taxes. A state or territory has the right to tax property brought into it, even through such property may have been taxed for the same year in the state or territory from which it came. This proposition is too well settled by the decisions and text writers to admit of discussion. The plaintiffs having brought their cattle into the Territory between March 1st and September 1st for the purpose of grazing, they fall within the provision of sec. 1 of the transient property act and must pay all of the taxes levied thereon, unless they are relieved there from by art. 2 of ch. 28 of session laws of 1899.

Section 1 of this article is as follows:

"That from and after the passage and approval of this act no taxes shall be assessed, levied or collected in any unorganized country, district or reservation which shall be or which may hereafter be attached to any county for.

judicial purposes, except taxes for the territorial and court funds."

Plaintiffs contend that under this section no taxes can be collected except the territorial and court funds; and that even if they cannot be discharged from all of their taxes by filing an affidavit with the assessor showing that they were assessed in another state, they are en titled to be relieved from the payment of all, except the territorial and court funds. If the plaintiffs had brought themselves within the rules of equity we would be com- pelled to consider this section of the act of 1899; but they have not; and it is a universal rule that he who seeks equity must do equity. (*State Railroad Tax Cases*, 92 U. S. 616-617, *Kimball v. National Bank*, 103 U. S. 733-735.)

Before the plaintiffs can be heard to question in a court of equity the legality of any portion of the taxes, they must pay or offer to pay that part over which there is no dispute, if any there be, and at least offer in their petition to pay such portion as the court may determine to be legal and just. No such offer is made in the petition in this case. One is only permitted to seek re- dress in a court of equity when the iron rules of the law cannot be widened so as to protect him against an im- pending wrong, and even then, before he can be relieved from an unjust burden, he must pay or tender that which he justly owes.

The apellants, not having done equity, the court will decline to consider and construe sec. 1 of art. 2, ch. 28, Ses- sion Laws of 1899, or to grant plaintiffs any relief, even though their case falls within the provisions of the law as therein enacted, but will withhold any expression of opinion upon such section until a case arises in which

a construction of this section is necessary to a determination thereof.

For the reasons herein stated the judgment of the lower court is hereby affirmed at the cost of appellants and the rules stated in the case of *Wilson v. Wiggins et al. (Supra)* are hereby modified to conform herewith.

Hainer, J., having presided in the court below, not sitting; all of the other Justices concurring.