## KELLEY v. RHOADS.

TAXATION — MIGRATORY LIVE STOCK — SHEEP BROUGHT INTO THE STATE FOR THE PURPOSE OF GRAZING — INTERSTATE COMMERCE.

1.  Where there is an independent purpose, on the part of the owner of a herd of sheep in bringing them into the State, to graze them upon the natural grasses, and they are so grazed, and, while in the State, and being driven through it, are maintained by grazing, such sheep are subject to State taxation, notwithstanding that they are being driven through the State from one State to another; and such taxation does not interfere with the interstate commerce clause of the federal Constitution.

2.  Upon the agreed statement of facts it is held that the trial court was justified in finding that the sheep of plaintiff were brought into the State for the purpose of grazing.

[Decided February 28, 1901.]

ERROR to the District Court, Laramie County, HON. RICHARD H. SCOTT, Judge.

This was an action by John Kelley against Oliver F.

Rhoads to recover taxes alleged to have been illegally collected from plaintiff by defendant while assessor of the county, upon a herd of sheep. The material facts are fully stated in the opinion.

*Van Orsdel & Burdick*, for plaintiff in error.

The essential elements of interstate commerce are : point of departure in one State, destination in another, and such time required or consumed as is customary and usual by the means employed. These elements are all presented by the agreed statement of facts. The property of plaintiff was, therefore, in transit and interstate commerce, and not subject to State taxation. The original point of departure and ultimate destination are the controlling factors ; and intermediate points of debarkation are of minor importance and in no sense controlling. When the factors necessary to impress upon any shipment of merchandise the character of interstate commerce are present no State legislation, excepting only that enacted under the police powers, can properly place any burden of any kind upon such shipment; and the incidental benefit accruing to the property while *en route*, together with the time consumed, is immaterial, provided the length of time does not exceed that ordinarily resulting from the mode of travel adopted, and provided further that there is no sale, disposal, or actual use of the property in transit.

By the expression, "use of property," in this connection is not meant the mere handling of the property in the manner in which it is usually handled, but it relates to consumption and application to the final purpose for which the property is to be used or manufactured, and not its transportation to market for sale, or killed for consumption. (State v. Engle, 34 N. J. L., 425; Brown v. Houston, 114 U. S., 620.)

Upon the facts, it is maintained that the character of the property as interstate commerce was clearly established, and that no fact justifies the conclusion that the

primary purpose of coming into the State was to secure the privilege of grazing.

*II. Waldo Moore*, for defendant in error, contended that there was no error in the judgment, and referred for a discussion of the law and facts in the case to the brief of defendant in the case upon the former hearing. (Kelley v. Rhoads, 7 Wyo., 237.)

POTTER, CHIEF JUSTICE.

The sole question in this case is whether certain sheep of plaintiff in error had obtained a *situs* in this State for the purposes of taxation.

On October 29, 1895, the defendant in error, as assessor for the county of Laramie, collected from plaintiff in error the sum of two hundred and fifty dollars as taxes upon a herd of sheep consisting of about ten thousand head belonging to the plaintiff in error, and then in the county of Laramie, in this State. Alleging the tax to have been illegally collected, plaintiff in error brought this suit in the district court to recover the amount so collected from him. The tax complained of was assessed and collected by authority of the provisions of Chapter 61, Laws of 1895. That act is set out in full in our opinion in this case when the same was before us on reserved questions, and its validity upheld. (7 Wyo., 237; 51 Pac., 593; 39 L. R. A., 594.)

The cause was submitted to the district court upon an agreed statement of facts. Judgment was rendered for defendant, and plaintiff now brings the case here on error, assigning as error that the judgment is not sustained by the evidence, and is contrary to law. The contention of the plaintiff in error is that the property taxed was the subject of interstate commerce, being in transit across this State from Utah to Nebraska ; and, as such, was not taxable under the laws of this State. It is insisted that the facts show that the sheep were not brought into this State to be grazed, but were merely in transit on hoof through the State, and that their maintenance by grazing,

while so engaged, was but an incident of their transportation.

When the case was here before, conceiving that the question whether or not the sheep were brought into the State for the purpose of being grazed, was a mixed one of law and fact, we did not decide it, deeming a decision upon a question of fact improper upon reserved questions. We did, however, in our opinion, mention the considerations which should control a determination of the fact, if in controversy, whether in a particular case sheep were brought here for grazing purposes, although in transit through the State.

We then said:

" We do not dispute the proposition that an owner of live stock, if not otherwise disobedient to the law, and is observant of the police regulations of the State, has the right to transport them to market by driving on foot, as well as by rail. Strictly speaking, they will be in transit by the one method as much as by the other. If, however, the purpose of such owner is not alone that of transportation, but comprehends also that of grazing, and feeding them upon the natural grasses which is their natural source of sustenance, not as a mere necessary incident of the travel, but as one of the purposes of such movement, they would not come within the rule which exempts personal property in transit from taxation. To determine the existence or non-existence of such a joint purpose all the facts must be considered, the course taken ; the character of the territory grazed upon ; the time employed ; the subsequent method of intended shipment ; the ordinary facilities for transportation by other means; the place selected for the commencement of the journey by rail, if that is in contemplation ; possibly the time of the year, and the eventual purpose of their shipment ; the character of the live stock and the manner in which said stock is customarily kept, maintained, and grown, and in general every competent fact which will tend to explain the purpose in view."

The statement of facts, so far as is material to this question, is as follows:

"Plaintiff at all times mentioned in the petition herein was the owner of the sheep mentioned in said petition, and that said sheep on or about the 29th day of October, A. D. 1895, were in the county of Laramie, in charge of James M. Yeates, the agent of the plaintiff, who was driving and transporting said sheep through the State of Wyoming, from the then Territory of Utah, to the State of Nebraska."

"In driving said sheep in such manner it was the practice of the person in charge to permit them to spread out at times in the neighborhood of a quarter of a mile, and while so being driven the sheep were permitted to graze over land of that width. They were driven in some instances through large pastures, in other instances through the public domain, and in other instances through pastures inclosed by fences. While being driven from the western boundary of the State to Pine Bluffs Station, they were maintained by grazing along the route of travel."

"It was a fact, and defendant had knowledge of the fact, and was notified by plaintiff's agent, that said herd of sheep was being driven across the State of Wyoming to Pine Bluffs Station for the purpose of shipment, and that the same were not brought into the State for the purpose of being maintained permanently therein."

"The time consumed in driving said sheep from the western boundary of the State of Wyoming to Pine Bluffs Station, in Laramie County, was from six to eight weeks, and by the route followed the distance traveled was about five hundred miles."

"That for the purpose of shipping said sheep it was not necessary that they should be driven into the State of Wyoming, and that the railroad over which they were shipped could be reached from the point where the sheep were first driven by traveling a less distance than was necessary to travel from the place where they were first driven to any point in the State of Wyoming."

As was said in our former opinion, it is well settled that property engaged in interstate commerce by being transported through a State, on its journey from one State to another, would not be liable to taxation in the State through which it is passing ; and if the sole purpose of the owner of live stock is to pass through the State on the way to eastern markets, such stock will not have been brought here to be grazed. It is also true that before personal property becomes subject to State taxation, it must have become identified and incorporated with the general mass of property in the State.

We held that when live stock are brought into the State to graze, they are fully identified and incorporated with the other property of the State ; and that if that purpose is present the length of time the property remains here is immaterial. That, in such case, no question of interstate commerce is involved, which prevents the exercise by the State of its power of taxation. And we said, " We observe no distinction, in respect to the matter under consideration, between the case of a sheep owner of Utah or some other State, driving or bringing his sheep into this State, for the purpose of and permitting them to graze here, and an owner of like property residing in this State who brings in from another State sheep for the same purpose."

Adhering to the views expressed in our previous opinion, we quote further some observations then made respecting this character of property :

" Live stock in this State is, in the greater part, maintained by feeding or grazing upon the natural grasses of the soil. In the case of some kinds of live stock, they are largely allowed to roam at will, but over territory more or less confined in extent. With sheep the custom is to keep them in convenient flocks or herds intrusted to herders, and to direct them from place to place, generally, as to a particular herd, is some certain locality, but covering in most cases a rather large and indeterminate territory. They are thus maintained until in proper con-

dition for disposition, shipment, or other purposes of the owner. The only way in which such property becomes identified and incorporated with the other property of the State, is by being turned at large or herded, to be maintained by grazing. Whether the purpose is that they shall remain in the State permanently or not is not a determining factor. Such a purpose does not exist in the case of a greater proportion of all the live stock in the State. The object of a cattle grower is to ship out of the State his cattle, as soon as they arrive at the proper age, size, or condition. To some extent that is also the purpose which the sheep owner has in view.''

''We do not understand that an ultimate design to transport sheep out of the State is at all inconsistent with a purpose of bringing them into the State to graze. The time of the contemplated shipment may be uncertain, or it may be extended for a considerable period into the future. Incidentally, no doubt, that intention should be taken into account, but we do not conceive it to be a conclusive circumstance in determining the *situs* of the property, or the purpose of its presence within the State.

'' It is altogether clear, that in case of herd sheep in this country, they must, according to custom, be maintained somewhere by grazing, until the time fixed upon has arrived for starting them upon their journey to some final destination. It may well be, that if it is not desired that they shall reach such destination before a certain time, and that in the meantime the necessity of allowing them to graze and obtain the benefits therefrom is recognized, places therefor may be selected by the owner which will subserve the latter purpose, and at the same time facilitate their final transportation when the occasion therefor shall occur. Such property is migratory; they are almost constantly moving; the character of the natural grasses, and the effect thereon by the grazing of sheep is such that such movement is necessary. They cannot be permitted to remain stationary, and feed in the same place a very long period of time. Therefore it follows, that, as they

must move, their course can be readily directed along the direction in which they are eventually to be taken. In such a case the purpose of grazing is not inconsistent with the idea of a driving or transportation to some distant place. Nevertheless, the mere fact that in such driving they are also permitted to graze upon the way will not determine at all hazards the character of the purpose in bringing them into the State. Each case must, it would seem, depend upon its own facts. It will not do to say that in every case, because an owner brings his sheep into the State to drive them through it to some other jurisdiction for purposes of sale or otherwise, that they are therefore merely in transit; for the reason that such a course might be selected which would consume quite a time in getting out of the State, and at the same time the animals would be maintained by grazing the same as if kept in the State from which they came, or if they had originally been within this State; and all the benefits would be derived that would accrue in the absence of any such intended transportation. The sheep would thus be used here in the same and only manner in which during the same time they would be used anywhere. We are of the opinion, therefore, that in determining the purpose and the *situs*, the course and method of travel is a proper subject, and one of the elements for consideration."

It is not expressly agreed in this case that the sheep were brought into this State to graze, nor, on the other hand, that they were not here for that purpose. That ultimate fact, then, was to be determined from the other facts and circumstances which were agreed to. The district court, following the rule previously laid down in the case, in holding the property taxable, must have found that a part of the purpose of the owner in bringing his sheep into the State, and transporting them through it, was that they might graze here, and while in transit, receive the benefits to be derived from the grazing of his animals upon our natural grasses. Is that finding justi-

fied by the agreed facts in the case? We are of the opinion that it is, and shall endeavor as briefly as consistent with the importance of the question, to state the reasons that influence our conclusion.

The evidence is that the plaintiff "was driving and transporting his sheep through the State of Wyoming from the then territory of Utah to the State of Nebraska," and again, "said herd of sheep was being driven across the State of Wyoming to Pine Bluffs Station for the purpose of shipment." In all this there is nothing conclusively inconsistent with a purpose originally existing to bring the sheep into this State to graze, not as a mere incident of the transit, but as an independent object of their coming into the State on foot, and of their movement. No doubt said independent purpose of grazing was connected with the intention to ultimately ship them by rail out of the State, and to so direct their course of travel while grazing that they would gradually pass through the State, and at a time approximately anticipated reach the contemplated point of shipment.

The fact that it was not intended to maintain them *permanently* within the State was shown, in our former opinion, not to operate as a determining factor in the case.

The distance traveled by the sheep during a period of six to eight weeks while they were in the State, made a daily travel of about nine miles. It may be, as suggested by counsel, that this is the maximum distance which such animals can be safely driven for such a continuous period of time — when the manner in which they were maintained is considered. Nevertheless, we believe it to be also true that sheep will for that or even a much longer period, travel daily eight or ten miles, and possibly occasionally a few miles farther than that, and, if allowed to graze, obtain all the sustenance they require.

It is not uncommon for sheep in this region to move in a day, while grazing, five or six miles, in the absence of a definite destination, and although not in transit from

one place to another. Sometimes in the case of ordinary grazing of a herd of sheep, they will move a greater distance, and that is not unusual, we believe, if it is found necessary to go farther to reach a supply of water.

In trailing or driving sheep from place to -place over a period of time more or less extended, it is not the custom to force them to any particular speed of travel. Those in charge confine their efforts to a mere direction of travel; keeping them headed in the desired direction, but permitting them to go slowly enough to eat of the natural grasses as they proceed. Under competent herders, sheep so driven will easily travel the daily distance covered by the sheep in question, and be well maintained at the same time by grazing along the route of travel when conducted through the public domain and pastures, and over territory such as was traversed by the sheep of plaintiff in their journey through this State.

In such case, then, sheep so traveling, while not brought into competition with other property of the State for the purposes of sale, perhaps, are in daily competition with all the live stock regularly maintained in the localities of the route of travel, in respect to the use of the natural grasses of the soil, incapable of reproduction in the same year. More than that, the effect of the grazing of sheep is such that it is a matter of common knowledge, a pasture over which they have been permitted to graze in large bunches, or herds, is rendered unfitted for the grazing of other classes of domestic live stock.

Now the sheep of plaintiff did not follow in the course of their transit any public highway. They roamed over pastures fenced and unfenced, and across the public domain, and were allowed to spread out a quarter of a mile in width. In other words, they were so directed or herded that they might graze.

The same railroad over which they were ultimately shipped could have been reached without coming into Wyoming at all, and that by being driven a less distance than was necessary to drive them to reach any point in

this State.    This appears from the agreed statement. We know, judicially, that between the western boundary of the State and Pine Bluffs Station, which is situated close to the Nebraska line, there were numerous stations, at any one of which the sheep could, if desired, have been transferred to the railroad for shipment.

It seems impossible to conceive that a part of the plaintiff's purpose was not the grazing of the sheep in this State.    Indeed, we are inclined to view the facts as disclosing that purpose to have been the controlling one; and that the method adopted for the movement of the sheep was employed for the reason that the sheep could at the same time be maintained in like manner as if they had been kept in Utah; and perhaps new pastures found, while keeping the owner's home ranges for other sheep or for another season or time of year.

Counsel for plaintiff in error suggests, indeed, that it is the custom of the trade to first put sheep on "feed lots" for varying periods before offering them for sale in open market, and that as the food used is corn, which is ready for consumption the latter part of October, in the corn-feeding States (of which Nebraska is one), the shipper plans to reach his destination about November first, partly on account of the availability of the grain at that time, and partly because driving at a later date would be difficult and hazardous on account of storms.    They concede that those purposes could be as well accomplished by holding the sheep at the point of departure until a later date, and then shipping them through quickly by rail.    But they state such shipment a longer distance by rail would be much more expensive.    The agreed facts are, however, silent as to the difference, if any, in the matter of expense between the two methods.

Adopt the contention of counsel for plaintiff in error, which has been ably presented, and it would be possible for sheep owners to keep their large herds moving from one State to another, and thus avoid taxation altogether; and such in many instances would, in our judgment, be

the actual result.    Thus the commerce clause of the federal Constitution would operate as a mere cloak to permit an evasion of State taxation on the part of a large and growing class of personal property.

The conclusion we have reached we believe to rest upon sound reason, and upon principle to be sustained by the authorities cited and reviewed in our previous opinion, as well as by others to be hereinafter referred to.

When property is held for any other purpose than that of continuing the shipment within a reasonable time, it cannot be considered as in transit.    Prentice & Egan on the Commerce Clause, 63 ; Standard Oil Co. v. Combs, 96 Ind., 179 ; Myers v. Commissioners, 83, Md., 385 ; Burlington Lumber Co. v. Willetts, 118 Ill., 559 ; Rieman v. Shepard, 27 Ind., 288.    The general rule is that when goods are held for any other purpose than for transportation the transit has ceased.    Prentice & Egan on Commerce Clause, 224.    A State may tax all property which has a *situs* within its limits, regardless of the fact that it may have come from, or is destined to, another State.    *Id.*, 225.

In the case of Burlington Lumber Co v. Willets, *supra*, the Lumber Company, having its place of business at Burlington, Iowa, bought logs in Wisconsin and Minnesota, where they were rafted and towed down the Mississippi River to the company's mills.    Some of the logs would be stopped on the way down the river at New Boston harbor, in Illinois, and left there until needed at the mills.    In sustaining a tax assessed by New Boston upon the logs in the harbor at that town in May, 1885, the court reaching the conclusion that the property was not *in transitu*, said, "New Boston harbor, or Sturgeon Bay, as it is usually called, is only thirty miles up the river from Burlington.    It is very accessible, and it seems plain that the company had selected the bay as a place of storage for its logs, — a place where its property could be shipped, and kept in safety until such time as it was needed at the mills in Burlington.    Indeed, for all prac-

tical purposes, it may be said that the transit of the property ended at New Boston.

"The property was therefore kept at New Boston on account of the profit of the owners to keep it there. The company made money by the transaction." * * * "If, then, the company had this property located in our State, and it was here for profit, and it was so located as to claim the protection of our laws, the property, in our opinion, had a *situs* here, and was liable to taxation."

Now in the case at bar the property was not kept in storage, but it was used for a profit to the owner, and it was so located as to claim the protection of our laws. In our view of the agreed statement, it is doubtful if the transportation of the sheep could be considered as having commenced until their shipment at Pine Bluffs Station, under the rule laid down in Coe v. Errol, 116 U. S., 517, referred to in our former opinion. (7 Wyo., 263.) We discover little distinction, if any, in respect to the matter under discussion, between storage in transit and grazing in transit.

In Standard Oil Co. v. Combs, *supra*, the Indiana court conceding that property in transit through that State, and there only for the purpose of transportation, would not be subject to taxation, said, "Property within the State for the purpose of undergoing any part of the process of manufacture, is here for more than a temporary purpose connected with its transportation. The *situs* of the property does not depend upon the extent of the work that is to be done upon it, for, if it is here to be put through any of the stages in the process of its manufacture, it is here for a purpose, which legitimately subjects it to taxation." In that case the property consisted of staves which the plaintiff had contracted for to be delivered to it at Pittsburg, Pennsylvania; but, under the contract they were first to be delivered at the yards of plaintiff, in Perry County, Indiana, to receive a finishing touch called "bucking," and then to be shipped to plaintiff at Pittsburg. The court said further, "Property

in this State for the purpose of being subjected to a process essential to its fitness for sale or use is situated here, no matter what may be its ultimate destination."

It seems unnecessary to enlarge upon the applicability of the principle announced in the above-mentioned case, to the question now before us. The property, of course, in the case at bar, was not here for any process in the way of manufacture; but the principle is precisely the same ; the difference existing in the character of the property. The sheep were here to be maintained while in transit to a shipping point, by feeding upon a valuable natural product of our soil, and which in itself furnishes the possibilities for the largest and most profitable industry of our State. It is of no consequence, whatever, that transportation on foot would be cheaper than by rail. Probably it would not be any less expensive if the owner was obliged to follow the public highways and purchase feed for his sheep, en route. The cheapness consists in the benefits to be derived from the grazing of the sheep. Taking into account the nature of the property, and the customary method of its maintenance ; and the principle would be the same whether the sheep were brought into the State and kept the same length of time in a single county ; and then shipped by rail, or caused to traverse two or more counties, or the entire State, and then shipped ; the purpose to graze them existing in either case. They are susceptible of grazing, as much as necessary for a reasonable maintenance, by the latter method as by the former.

The same question in relation to cattle was before the supreme court of Oklahoma, Halff v. Green, 62 Pac., 816. It was said in that case, "The allegation in the petition that ' the cattle were brought into the reservation for the purpose of grazing the same in transit to market,' is not sufficient to take these cattle out of the general rule." See also Collins v. Green, 62 Pac., 813 (Okla.); Lasater v. Green, id., 816; Russell v. Green, id., 817. In Russell v. Green the court say, " It is next contended

that these cattle were what is known as 'through cattle;' that they were only stopped off in the Osage Indian reservation so that they could rest and recuperate; that they were to be shipped on to market after they were pastured a short time. This position is taken only for the purpose of evading the true spirit of the transient property act The petition itself shows that the object and purpose of locating these cattle in the Osage Indian reservation was to graze them and put them on the market some time during the summer or fall. In other words, the owner intended to fatten them on the grass in the reservation and then market them in the fall. These cattle were properly taxable, and the owner cannot evade taxation by calling them 'through cattle.'"

A similar question arose in Texas. The owners of certain cattle assessed in Texas sought to avoid the tax on the ground that the cattle were only passing through Texas en route from Oklahoma to Chicago. The cattle in question were brought from their accustomed range in Oklahoma Territory to some feeding pens of the owners at Bowie, in Montague County, Texas, to be fattened for market. They were first driven to Waggoner, Texas, and thence carried by rail to Bowie, under written contracts, fixing Chicago as the place of their ultimate destination, consigned, however, to the owners themselves.

The cattle were unloaded at Bowie, and fed there for about ninety days, when they were carried to market under bills of lading naming Waggoner as the initial point.

The court say, "We are not inclined to hold that cattle in Texas while being fattened in the owner's pens for the outside markets are too transient to have a *situs* and to be taxable here. Indeed, feeding cattle for such markets has become, as grazing cattle has long been, a permanent as well as extensive and profitable pursuit of the Texas people. It is a local industry, and during the feeding season the cattle, from whatever source they may come, become an important part of the mass of personal

property of the State, enjoying alike the protection of our laws, and subject to the common burden of taxation." * * * "Still less are we inclined to hold that cattle so situated are exempt from local taxation in consequence of the Commerce Clause of the Constitution. If it should be so held, then to what movable property in the States may not this ever-expanding clause be extended? The paper cloak of an adjustable through bill of lading, like these found in this record, may thus be easily made broad enough to cover from local taxation all the cattle of Texas, whether grazing in pastures or on the open range or feeding in pens. To the feeding in transit privilege need only be added the grazing in transit privilege, and all will be covered. If the owner may be allowed ninety days for feeding, why may he not be allowed six months or a year or two for grazing? In both cases the cattle may be said, figuratively speaking, to be on their way to Chicago or other market, their ultimate destination, but not in the sense of interstate commerce or tax laws." Waggoner v. Whaley, 21 Tex., Civ. App. 1.   See also Prairie Cattle Co. v. Williamson (Okla.), 49 Pac., 937.

Upon the statement of facts, we think the district court was justified in finding that the sheep of plaintiff in error were brought into this State for the purpose of grazing, and thus had acquired a *situs* here for the purpose of taxation; and we are of the opinion that the tax in no sense interfered with the operation of the interstate Commerce Clause of the Federal Constitution.

Indeed, we are convinced that the facts admitted as to the manner in which the sheep in question were handled or cared for was practically the same as that employed by residents of the State interested in the sheep-growing industry who submit to the revenue laws of the State without question.

The wild natural grasses of this State, in common with all the arid region of the West, do not grow in the same abundance as tame grass, nor furnish near the amount of feed per acre.   This partially explains the reason for the

necessity of the almost constant movement of sheep sustained by grazing, and renders more clear the reason for the average daily travel of a herd of sheep consisting of ten thousand head, as in the case at bar.     The judgment will be affirmed.

*Affirmed.*

CORN, J., and KNIGHT J., concur.