[L. A. No. 2432.   In Bank.—April 15, 1910.]

C. A. CANFIELD, Appellant, v. COUNTY OF LOS ANGELES, Respondent.

TAXATION—SHARES OF STOCK IN DOMESTIC CORPORATION—PROPERTY OUT OF STATE—CASH VALUE OF SHARES ASSESSABLE—POWER OF STATE. —The state has a right to fix the *situs* of shares of stock in a domestic corporation, though its property is situated out of the state, and may assess such shares according to their cash value, without deduction on account of such outside property.

ID.—PURPOSE AND CONSTRUCTION OF REVENUE LAWS.—It is the purpose of all revenue laws, as nearly as possible, to impose upon all property its just proportion of taxation, and a construction of the statute should not be had which will permit shares of stock held here

in domestic corporations whose property is located beyond·the state to escape their just burden of taxation.

ID.—PURPOSE OF TAXATION—CONSTRUCTION OF CONSTITUTION.—In view of the purpose of taxation, which is to tax citizens for the support of the government that protects them and their property, the provision of section 1 of article XIII of the state constitution, providing that "all property in the state . . . shall be taxed in proportion to its value," including "stocks," cannot be construed to mean that "stocks" are not to be taxed when they represent property situated out of the state, since such a construction would be at variance with the ordinary meaning of the words used in that section and would result in unfair taxation of personal assets.

ID.—DOUBLE TAXATION.—Double taxation in a legal sense does not exist, unless the double tax is levied upon the same property within the same jurisdiction. Where the property owned by a corporation is in another jurisdiction, the assessment of shares of stock therein held by citizens of this state is of property having its *situs* here, and may be taxed to them without any double taxation under the laws of this state. It is immaterial whether the property of the corporation is or is not taxed in another jurisdiction.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Ward Chapman, for Appellant.

J. D. Fredericks, District Attorney, and Hartley Shaw, Chief Deputy District Attorney, for Respondent.

MELVIN, J.—Appeals are taken from a judgment and from an order denying plaintiff's motion for a new trial in· this case and similar appeals are pending in two other cases which are practically identical with this one. They are Los Angeles Nos. 2433 and 2434 and are entitled *Doheny* v. *County of Los Angeles, post,* p. 624, [108 Pac. 707]. The briefs filed are pertinent to the appeals in all three of these cases, and it is agreed that the decision in this one shall apply to the other two. Plaintiffs seek to recover taxes paid under protest upon the ground that an assessment of stock in a domestic corporation to the individual stockholders is unauthorized and prohibited by the laws of the state of California. The superior court found that the Mexican Petro-

leum Company was on the first Monday in March, 1906, and thereafter a corporation organized under the laws of this state and having its principal place of business in Los Angeles; that said corporation at that date and ever since has owned a large tract of land in Mexico, upon which many valuable wells producing petroleum are situated; that the corporation carries on its business of marketing and selling petroleum outside of the state of California; that the Mexican Petroleum Company has ever since its incorporation maintained offices in Los Angeles and governed its entire business from that city; that on the first Monday in March, 1906, there were 5,411,000 shares of the capital stock of the corporation outstanding and owned by individuals; that the value of this stock was seventy-five cents per share and that the property of the corporation in California did not exceed ten thousand dollars in value.     The court concluded that plaintiff, Canfield's shares (808,211 in number assessed for the sum of $323,285) had been correctly subjected to valuation by the assessor and to payment of the tax (amounting to $3572.89.)    A similar conclusion of law was reached in the two cases in which the respondent Doheny sought return of the taxes paid on his stock for the years 1905 and 1906. In the former year he owned 5,400,000 shares of the stock, found by the court to be worth fifteen cents a share, and this was assessed for fifty thousand dollars, the amount of the tax being five hundred and fifty dollars.    In the latter year his holding of stock amounted to 1,729,000 shares, assessed for $691,600, the tax thereon amounting to $7192.64.

Appellant's counsel seeks to establish the doctrine that the tax here considered is in substance a levy upon property lying outside of California and beyond the jurisdiction of this state, and that having such extra-territorial application it deprives the taxpayer of his property without due process of law and is therefore void, being in conflict with the fourteenth amendment of the constitution of the United States.

These cases are practically identical in principle with *Chesebrough* v. *City and County of San Francisco,* 153 Cal. 559, [96 Pac. 288].   In that case the assessor deducted the value of the corporation's property in California from the value of that of the stockholder who was assessed for almost the entire amount of the stock of the company.   While here

there was no such formal deduction it will be seen that in each case now before us the difference between the actual value of the stock as found by the court and the amount for which it was assessed far exceeded the value as established by the court of the corporation's property located within the territorial limits of the state of California. Therefore the law announced in the Chesebrough case applies fully here. In that case this court quoted with approval from *Commercial National Bank* v. *Chambers,* 21 Utah, 324, [61 Pac. 560], as follows:—

"In the case at bar deductions were made from the value of the stock of the value of all real estate owned by the bank which is situate within the limits of the state, but deductions for its real estate without the state were refused by the assessor and board of equalization, but the court below ordered that the value of the real estate situate in other states should also be deducted from the value of the stock. In this we think the court erred. . . . The state has a right to fix its particular *situs* as to such stock (corporate stock) for the purposes of taxation, and its value for such purposes cannot be diminished by deducting therefrom the value of property not situated or taxable within the state, and over which the state can exercise no control. The bank, therefore, had no right to have the value of its real estate situate without the state deducted from the value of the stock. The true criterion, as fixed by the statute, is the true value of the stock, without reference to the question where, or in what manner or nature of property or security, the capital stock may be invested. Whether that be invested in real estate or other property beyond the jurisdiction of this state, the latter having control over the shares and their value, the peculiar nature and value of the investment of the capital stock of the corporations beyond the limits of the state can form no proper subject for specific deduction or abatement from the true value of the shares of stock when presented to be assessed for purposes of taxation. It is exclusively with the shares of stock, and their true value, as representing the entire corporate assets, that the tax commissioner has to deal, and not with the nature and locality of the investment of the capital stock of the corporation, except as to real estate of the company situate within this state." (*American Coal Co.* v. *Allegany County,*

59 Md. 185; *Dwight* v. *Boston,* 12 Allen, 316, [90 Am. Dec. 149]; *Nevada Bank* v. *Sedgwick,* 104 U. S. 111, [26 L. Ed. 703]; *Kelley* v. *Rhodes,* 7 Wyo. 237, [75 Am. St. Rep. 904, 51 Pac. 593], affirmed in 9 Wyo. 352, [87 Am. St. Rep. 959, 63 Pac. 935].) See same cases, 188 U. S. 1, [23 Sup. Ct. 259]; *Commercial Nat. Bank* v. *Chambers,* 182 U. S. 556, [21 Sup. Ct. 863].

After some further analysis of the provisions of the constitution and the code applicable to the discussion this court, in *Chesebrough* v. *City and County,* used the following language which unless we make a radically different rule is decisive of the point here considered:—

"Applying this principle to the section in question in connection with the constitutional provisions requiring the taxation of all property, including shares of stock, at its full value, and it must be taken to mean that when the property of the corporation in the state is taxed directly to the corporation, the shares of stock held here and subject to taxation shall not, to the extent that the property represented by it is taxed, be thus taxed. This exemption can only be extended, however, to deductions from the value of the shares of stock, the corporate property of which is situated in this state, and directly taxed to the corporation. It is the purpose of all revenue laws, as nearly as possible, to impose upon all property its just proportion of taxation, and the construction of the statute should not be had which will permit shares of stock, held here of vast value in domestic corporations whose properties are located beyond the state, to escape their just proportion of such taxation.

"Under these views the shares of stock of the Tacoma Mill Company held by the Estate of Hanson, except to the extent that the property of the corporation in this state was actually assessed and taxed to the company, were taxable to their full value."

But in spite of the opinion just quoted and the provisions of section 1 of article XIII of the constitution of California, the attorney for appellants quotes the applicable portion of that constitutional provision and comments upon it in part as follows:—

"Section 1 of article XIII provides that: 'All property in the state . . . shall be taxed in proportion to its value to be

ascertained as provided by law. The word "property" as used in this article and section is hereby declared to include . . . stocks,' etc.

"Here, then, is an express declaration that it is only property in the state that is subject to taxation, and the word 'property' is construed to include stocks only as that word is used in this article and section. It seems to us that this is almost an express declaration that the word 'property' shall not be construed to include any of the things mentioned unless they are within the state.

"The words 'in this state' certainly do not necessarily mean property which is in fact out of the state and only in this state theoretically by virtue of some legal fiction, and so we say that accepting the construction most consonant with the justice of the case, we should not extend it to include stocks representing properties which are physically beyond the state's jurisdiction."

When we consider the purpose of taxation it must be apparent that there should not be a construction at variance with the ordinary meaning of the words of the above quoted section of the constitution. Citizens are taxed for the support of the government that protects them and their property. It would be manifestly unfair to tax one citizen for personal property of a tangible, salable kind located in California and omit the imposition of a similar burden on the possessors of equally valuable and vendable personality, just as difficult to protect, just as much subject to the law of supply and demand in this state, because the value of that property depends in whole or in part upon the holdings of a corporation in a country where they may or may not be taxed. In *Bank of Commerce* v. *Tennessee,* 161 U. S. 146, [16 Sup. Ct. 456], it was held that "the capital stock of a corporation and the shares into which such stock may be divided and held by individual stockholders are two distinct pieces of property. The capital stock and the shares of stock in the hands of the shareholders may both be taxed and it is not double taxation."

The doctrine for which appellants contend would in many cases prevent the assessment in California to residents of this state of valuable stock in foreign corporations. This would be true, at least, in respect to the stock of those corporations.

having their entire property in other countries. Assessments levied upon such stock and similar credits, however, have been held to be valid even when the evidences of ownership were out of the state. (*Stanford* v. *San Francisco,* 131 Cal. 34, [63 Pac. 145]; *Estate of Fair,* 128 Cal. 613, [61 Pac. 184].)

In Ohio this question has come up in practically the same manner in which it is presented here, in a case in which the assessment of stock in a foreign corporation was involved. In that case, *Bradley* v. *Bauder,* 36 Ohio St. 34, [38 Am. Rep. 547], the court said:—

"But it is said, that because the capital of the company is invested in real and fixed property in the state where the corporation is located, and in which state, taxes upon the same are regularly levied and paid, a tax here upon the shares of stock of those residing here, is a tax upon the same property, and therefore results in double taxation.

"The argument is: that the capital of the corporation is invested in property which is taxed in the name of the corporation, and that the shares of the capital stock, when owned by individuals, only represent proportions in the ownership of such property, and hence, to tax the shares is another mode of taxing the property of the corporation, and that a tax upon both, although the tax upon one is imposed in another state, violates the rule or principle of equality established by the constitution. This argument, however plausible it seems, has never met with favor from the courts. Double taxation, in a legal sense, does not exist, unless the double tax is levied upon the same property within the same jurisdiction. Here the property owned by the plaintiffs is not only not the same as that owned by the corporation, but its *situs,* so far as shares of stock are capable of one, is in a different state. . . .

"The constitutional power to tax shares of stock, owned by our citizens in corporations located without the state, does not depend on whether the capital of the corporation is or is not taxed in the state where the corporation is created. The power is the same, whether the capital of the corporation is there taxed or not; otherwise, the power of taxation conferred by the constitution would be made to depend upon the operation of laws of a foreign jurisdiction—a proposition

so obviously ill founded that the moment it is stated its falsity becomes apparent."

In the matter of taxing the shares of stock in a domestic corporation owning property without the state that court has gone even beyond the doctrine in the Chesebrough case, because it sanctions assessment of the stock without deduction for the value of the corporation's property in the state. (*Lander* v. *Burke,* 65 Ohio St. 532, [63 N. E. 69].)

After a careful examination of all the authorities presented we see no reason to change the rule expressed in *Chesebrough* v. *City and County of San Francisco,* 153 Cal. 559, [96 Pac. 288], and the other cases to which reference has been made herein.

The judgment and orders from which appeals are taken are therefore affirmed.

Angellotti, J., Sloss, J., Henshaw, J., and Lorigan, J., concurred.

Shaw, J., did not sit in the foregoing cause.